Oldham, J. This case involves the constitutionality of the act of the General Assembly, approved December 16th, 1846, entitled “an act to define the jurisdiction and regulate the proceedings of justices’ courts, in cases of breach of the peace.” The act rests for support upon the third amendment of the constitution proposed at the session of 1844, and finally adopted at the session of 1846, as a part of the constitution. That amendment declares, that “the General Assembly shall have power to confer such jurisdiction as it may from time to time deem proper on justices of the peace in all matters of contract, covenants and actions for the recovery of fines and forfeitures, when the amount claimed does not exceed one hundred dollars, and in actions and proceedings for assault and battery and other penal offences less than felony, which maybe punished by fine only.” For the purpose of carrying into effect the power thus conferred, the act under consideration was passed by the legislature. The first section of the act provides “that hereafter no assault, assault and battery, or affray, shall be indictable, but all such offences shall be prosecuted and punished in a summary manner, by presentment of a constable or any other petson before justices of the peace, as hereinafter provided.” Against the act it is argued that it contravenes the 14th section of the Declaration of Rights, contained in the constitution, which declares that “no man shall be put to answer any criminal charge, but by presentment, indictment or impeachment;” that an assault and battery is a criminal offence, within the meaning of this section of the Declaration of Rights; and cannot be punished without presentment or indictment; as held in the case of Rector v. The State, 1 Eng. Rep. 189; that the General Assembly possesses no power under this provision prescribing the mode of amending the constitution; to alter or dispense with any portion of the Declaration of Rights, as the provisions therein contained are by the 24th section declared to be “excepted out of the general powers of the government, and shall forever remain inviolate/’ And further it is argued , conceding the power to alter or amend the Declaration of Rights, the General Assembly has not in the present case attempted to do so by dispensing with the necessity of an indictment or presentment by a grand jury. These are substantially the arguments urged against the constitutionality of the act, and which it is the duty of this court duly to consider. Previous to the adoption of tire amendment to the constitution, an indictment or presentment was an essential prerequisite for the trial of offenders for breaches of the penal statutes of the State, and no man could be held to answer any criminal charge unless so made. Rector v. The State, supra. An indictment is a written accusation of one or more persons of a crime or misdemeanor, presented to, and preferred upon oath, or affirmation, of a grand jury legally convoked. 4 Blackstone’s Com. 302. A presentment, properly speaking, is the notice taken by a grand jury of any offence, from their own knowledge or observation, without any bill of indictment laid before them at the suit of the government; upon such presentment, when proper, the officer employed to prosecute, afterwards frames a bill of indictment, which is then sent to the grand jury, and they find it to be a true bill. 4 Bl. Com. 301. Bouvier’s Law Dict. Presentment. The terms “indictment” and “presentment,” having, then, legal and technical significations, which were well understood at the time of the adoption of our constitution, cannot be preferred except by a grand jury, and if still necessary in the cases specified in the act of which jurisdiction is conferred upon justices of the peace, cannot be dispensed with, and a “presentment of a constable or any other person” substituted in their stead. This leads us to the consideration of the question, whether the General Assembly, under the provision prescribing the mode of amending the constitution, can alter or dispense with any portion of the Declaration of Rights. By the term “constitution” we understand the supreme original written will of the people, acting in their highest sovereign capacity, creating and organizing the form of government, designating the different departments, assigning to them their respective powers and duties, and restraining each and all of them within their proper and peculiar spheres. State v. Ashley, 1 Ark. Rep. 513. It being a well established principle that a State legislature can exercise all powers, which are not expressly or impliedly prohibited by the constitution, for the reason that whatever powers are not limited or restricted, they inherently possess as a portion of the sovereignty of the State. The convention, which framed the constitution of the State, for the purpose of safeguards and security for the liberty of the citizens, and to prevent “encroachment upon the rights therein retained,” deemed it proper to set forth in a “Declaration of Rights,” certain “great and essential principles of liberty and free government,” and “declare that every thing in that article is excepted out of the general powers of the government, and shall forever remain inviolate, and that all laws contrary thereto, or to the other provisions therein contained, shall be void.” The principles thus declared are a part of the constitution, and no more binding or obligatory than any other portion of that instrument, and may be changed or amended by the General Assembly, in the mode prescribed, unless the language of the 24th section excepts them from the amending power. ' The departments of our state government are, by the constitution, clothed respectively with general and specific powers, which may be exercised without control. Among the general powers of the legislative department, is that of passing any law not inconsistent with the Constitution of the United States or of the State; to the judiciary belongs the power to adjudicate the laws so made, and to the executive to enforce those laws. But the principles set forth in the Declaration of Rights are excepted out of these “general powers,” and therefore, should the Legislature, in the exercise of its general powers, pass any law violating any of the “essential principles of liberty,” so declared, the duty would devolve upon the judiciary to declare the law void, and the executive should refuse to enforce it: and hence it is declared by the 24th section, that all laws contrary to the Declaration of Rights or to the other provisions contained in the constitution, shall be void. To the general and ordinary powers of the government conferred by the constitution the prohibition extends, and no further, but does not limit the General Assembly, in the extraordinary and specific authority and power conferred upon it, to propose and adopt amendments to the constitution. The constitution, in prescribing the mode of amending that instrument, does not limit the power conferred to any particular portion of it, and except other provisions by declaring them not to be amendable. The General Assembly, in amending the constitution, does not act in the exercise of its ordinary legislative authority of its general powers; but it possesses and acts in the character and capacity of a convention, and is, quoad hoc, a convention expressing the supreme will of the sovereign people, and is unlimited in its power save by the constitution of the United States. Therefore, every change in the fundamental law, demanded by the public will for the public good, may be made subject to the limitation above named. The next question to be considered is, whether the third amendment of the constitution, authorizing the legislature to confer upon justices of the peace jurisdiction, “in actions and prosecutions for assault and battery, and other penal offences less than felony, which may be punished by fine only, so far repeals or modifies the fourteenth section of the Declaration of Rights as to dispense with the necessity of a presentment or indictment by a grand jury, as a foundation for the exercise of that jurisdiction? It does not do so by express words, and if at all, it is by implication, resulting from the incompatibility between that section and the amendment. To determine this question, the usual and ordinary rules of construction are applicable. Such a construction should be put upon the amendment as will give it effect and not defeat the obvious intention of the framers of that provision. The intention to give jurisdiction of the offences specified to justices of the peace, is clearly and explicitly expressed. Could it have been the intention of the General Assembly that, for the purpose of exercising their jurisdiction, each and every justice should empannel a grand jury, and swear and charge them with all due solemnity; that indictments, or presentments should be formally drawn, considered of and returned as true bills? If such was the intention, an attorney for the State would be necessary for each justice of the peace, to prepare indictments and prosecute the accused. Such a state of things would not only be absurd but an intolerable nuisance. The idea cannot be entertained for a moment, that such an intention was in the minds of the General Assembly. Previous to the adoption of the amendment under consideration, the jurisdiction of all criminal and penal offences belonged to the Circuit Courts. The mischief was the great delay and often failure of justice under the existing system. The terms of the Circuit Court were held every six months; and indictment or presentment could not be preferred until the term of the court held next after the commission of the offence, after which a hearing might be postponed from term to term, at the instance of either the State or the defendant, and when the cause came on for trial, by reason of the frailty of memory, witnesses could not, in many cases, detail the facts of the transaction as they actually occurred, or could not be obtained in consequence of death or removal beyond the jurisdiction of the court, and by these means the guilty often escaped unpunished and the innocent were convicted. To the latter, although finally acquitted, injustice was often done, by his being subjected to the trouble of attending court from time to time, to the neglect of his private affairs, and the expense of obtaining witnesses and employing counsel, in order to exculpate himself from an unfounded accusation, preferred by a grand jury, upon ex parte testimony, in many instances, of prejudiced and incredible witnesses. Counties were subjected to heavy expenses by the failure of conviction in cases long pending, and in which many witnesses had been in attendance. The remedy intended for the evil was a simple, summary, speedy and efficient one, by a hearing before a justice of the peace, in the neighborhood where the offence was committed, and immediately after its commission, where the witnesses could be easily obtained, and while all the facts and circumstances were fresh in .their memories; in consequence of which there would be a greater certainty of a conviction of the guilty, and an acquittal of the innocent, to the relief of the latter from unjust, expensive, vexatious, and harrassing prosecutions, and the county treasuries be relieved from burdensome expenses incident to unsuccessful prosecutions. Such being the intentioir of the General Assembly, if we declare an indictment or presentment as necessary before the defendant can Sae held to answer, we would give a construction to the amendment which would not only defeat the manifest intention of its framers, but also that they were guilty of an inexcusable oversight, or a palpable absurdity. Although the power is expressly granted to the Legislature to confer the jurisdiction, yet such a construction would be equivalent to declaring the amendment nugatory, as it would be so encumbered as to render it wholly or almost impossible to carry out the intention of the framers of the amendment. We must give such a construction to the amendment as will give it effect, and if it cannot take effect without conflicting with some pre-existing clause of the the constitution, the latter must yield to the former. The fourteenth ¡section of the bill of rights, so far as it requires an indictment or presentment by a grand jury, of the offences of which jurisdiction is authorized to be conferred upon justices of the peace, must be regarded as modified, in fact pro tanto repealed, by the amendment to the constitution. Á different conclusion would conflict with every legal and rational rule of construction. We not only hold that the General Assembly, in the mode prescribed for amending the constitution, had the power to amend the Declaration of Rights, but that they have done so, and that under the amendment an indictment or presentment by a grand jury is not necessary to the jurisdiction of justices of the peace, conferred upon them by the act of December 16th, 1846. An objection is taken to the 11th section of the act limiting the number of the jury to six men. The right of trial by jury is a constitutional right. From the earliest period of the common law the term jury has had a technical and specific meaning, and has ever signified “a body of twelve citizens, duly qualified to serve on juries, em: pannelied and sworn to try one or more issues of facts submitted to them, and to give a judgment respecting the same called a verdict.” Bouvier’s Law Dict., title Jury. The constitutional provision securing the right of trial by a jury means a jury of twelve men, according to the known technical meaning of the term.. Of his right to such a jury the defendant cannot be deprived, except by his own consent. True, he may waive the right and submit to a decision of six men, even to that of the justice of the peace himself, but in all cases where he may require it, it is the duty of the justice to empannel a legal jury of twelve men for the trial of the cause. This question does not properly present itself in the present case, but we have deemed it proper to say thus much upon it, for the guidance of justices of the peace in the exercise of the new jurisdiction with which they have been invested. It might be plausibly argued that, under the act of 1846, the justices of the peace do not possess jurisdiction of the offence charged in the indictment preferred in this case, because it appears that the of-fence was committed before the passage of the act, and was subject to a fine of not less than ten and not more than two hundred dollars; Rev. Stat., title Crim. J., Art. 5, sec. 6; and that the second section of the act declares that “the jurisdiction of justices of the peace shall not extend to trial or punishment in any case of riot, rout or unlawful assembly, nor to any assault and battery, which by the then existing laws, may be punished by imprisonment in the penitentiary, or by fine exceeding one hundred dollars.” The expression “the then existing laws,” has reference to the laws in force at the time of the trial or punishment, and not to the time the offence was committed. Under the 11th section of the act of 1846, justices of the peace cannot impose a fine of less than five nor more than one hundred dollars. The Statute lessened the penalty which has reference to cases committed before the passage of the act as well as those committed after; and, therefore, had a justice taken jurisdiction of the case specified in the indictment, the defendant at the time of the trial could not have been punished by a fine exceeding one hundred dollars. The Statute confers jurisdiction of simple assaults,, affrays, and common assaults and batteries, upon justices of the peace, and leaves the higher grades of offences to be punished by indictment or presentment in the Circuit Court. From a careful consideration of the questions presented in this case, and of the arguments against the constitutionality of the act, we-are of opinion that the act does not infringe the constitution, and must be sustained. Affirmed.