VAUGHN, Respondent, v. SCADE *et al.*, Appellants.

1. In all trials in courts of record in which a party is entitled to a jury, the jury must consist of twelve men. The right to demand in such cases a jury of twelve men is a constitutional right.
2. The provision in the act organizing the St. Louis law commissioner's court prescribing that "in all jury trials in said court the jury shall consist of six lawful jurors, or a less number if the parties shall consent thereto," is unconstitutional; juries in that court, as in all courts of record, must consist of twelve men. (R. C. 1855, p. 1597, § 6.)

Vaughn v. Scade.

3. If, however, a trial in said court proceeds with a less number than twelve jurymen, and no exceptions are taken on that ground, a party can not avail himself of the error except by motion in arrest of judgment, which must be made within the time prescribed by law or the rules of court.

4. There is nothing in the bill of rights which prevents parties from trying, by consent, their causes in the St. Louis law commissioner's court with six jurors, as provided in the act organizing that court; the consent should always, in such cases, be entered of record.

5. Courts should not confuse juries by instructing at too great length.

6. He who drives a carriage in a crowded street should exercise a diligence proportionate to the dangerous nature of the employment.

7. To authorize one defendant to testify in behalf of his co-defendant, his testimony must be such as will not weigh in his own behalf; it should bear upon some special defence peculiar to such co-defendant.

### *Appeal from St. Louis Law Commissioner's Court.*

This was an action to recover damages for an injury to an infant son of the plaintiff, an injury alleged to have been caused by the negligent driving of a carriage by a servant of defendant. At the trial, when the cause was called for trial, the plaintiff demanded a jury, and the defendants demanded that the action should be tried by a jury of twelve men, insisting upon that number under the constitution. The court refused to empannel a jury of more than six persons. Exceptions were duly taken. Much testimony was adduced to show the circumstances under which the alleged injury took place, and the degree of negligence or care exercised by the driver. The defendant Scade called his co-defendant Sauer and asked the court to allow him to be sworn and examined " as a witness on behalf of said Scade, to prove matters material for the defendant Scade." The court refused this on objection of plaintiff. The same request was made in behalf of defendant Sauer, and overruled. It is deemed unnecessary to set forth the instructions.

*C. D. Coleman,* for appellants.

I. The court improperly refused to empannel a jury of twelve men. The court was a court of record. The right to a jury of twelve men was a constitutional right. (2

Kern. 198; 2 Wis. 22; 2 Park. 312; 3 Wis. 219; 2 Ohio, N. S., 296; 3 Park. 22, 544; 4 Ohio, N. S., 167, 494; 18 Barb. 451; 5 S. & M. 664.) The court erred in giving and refusing instructions. The court erred in not permitting the defendants to be sworn in each other's behalf.

*Decker & Voorhis*, for respondent.

I. The court properly refused the demand for a jury of twelve men. The provision in the act organizing the court authorizing a jury of six men is constitutional. It was not intended by the constitutional provision to tie up the hands of the legislature so that no regulations of the trial by jury could be made. (Sedgw. on Stat. and Const. Law, 547.) It has reference rather to the *principle* of trial by jury than to the number of jurors. The provision of the constitution is not violated so long as the trial by jury is not substantially impaired, although it be made subject to new modes and even rendered more expensive. (Ib.; Beers v. Beers, 4 Conn. 539; Colt v. Eves, 12 Conn. 243.) We are not bound by the common law definition of a jury. (1 A. K. Marsh. 213; 2 Strob. 560; 14 Ill. 171.) In 1816, the common law was introduced. Both before and after this introduction, the subject of trial by jury underwent various changes as to the right, mode and number of jurors. (1 Terr. Laws, 5, 61, 89, 172, 307, 851.) Under the state organization, the legislature has always exercised the power of modifying trial by jury in mode and number. (See R. C. 1825, p. 47, 485; 1835, p. 360, 367, 463, 546–8; 1845, p. 653, 662, 426, 429, 499; 1855, p. 954, 965, 1261, 1262, 1372.) Before and since the adoption of the constitution, the courts have dealt with the institution of trial by jury without regard or reference to the common law definition. The court did not err in instructing the jury. (19 Mo. 507, 566; 4 Dana, 497; 17 Barb. 94; 9 Porter, 336; 3 M. & W. 244; 10 M. & W. 545; 11 East, 60; 12 Q. B. 439; 8 Man. Gr. Scott, 115, 123.) The court properly refused to allow the defendants to testify for each other.

SCOTT, Judge, delivered the opinion of the court.

This was an action for negligently driving a carriage, whereby a child of the plaintiff was injured, by which the child's services were lost and expenses incurred in curing him. There was a judgment for the plaintiff.

The case originated in the law commissioner's court, and was tried there. On the cause being called for trial, the plaintiff demanded a jury, and thereupon the defendants required that the action be tried by a jury of twelve men, objecting to a less number; but the court refused to have empannelled a jury of more than six, to which the defendants excepted.

The law commissioner's court is a court of record, exercising its jurisdiction according to the course of the common law. The act organizing that court prescribes that in all jury trials in said court the jury shall consist of six lawful jurors, or a less number, if the parties shall consent thereto. (Sec. 6.) The eighth article of the declaration of rights annexed to the constitution of this state declares that the right of trial by jury shall remain inviolate. This is not the first occasion on which the attention of this court has been called to this provision in the declaration of rights. In the case of the Bank of Missouri v. Anderson, 1 Mo. 175, decided as early as 1822, it was the opinion that the provision in the bill of rights under consideration required that the jury should consist of twelve men, and, among other things, that they should be unanimous in their verdict. Certainly if there are any essential requisites in a jury trial, among them must be the number of jurors and unanimity in their verdict. If the declaration of rights does not preserve these elements of the trial by jury from change, then it is in the power of the general assembly to take away from that mode of trial all those incidents which have endeared it to the people among whom it has prevailed. If, in cases where the right to a trial by jury is secured, the number of jurors can be reduced from twelve to six, with equal propriety it

can be reduced to two or four. The term "trial by jury" was well known and understood at the common law, and in that sense it was adopted in our bill of rights. Of course the non-essentials of that institution, such as concern the qualification of jurors, the mode of summoning them, and many other such matters, were left to the regulation of law. The constitution is preserved in retaining the substance of that form of trial as it was known and practiced among those from whom we have derived it. This subject has undergone examination in other tribunals, and we find them concurring in those views. They unite in declaring that where there is a constitutional guaranty of the right to a trial by jury, twelve is the number of which the jury must be composed. (Work v. The State of Ohio, ——, 296; Byrd v. The State, 1 How., Miss., 177; The State v. Cox, 3 Ark. 436; Dowling v. The State, 5 Sme. & Mar. 664.)

We are of the opinion that, as the court of the law commissioner is a court of record, having common law jurisdiction and proceeding according to the course of the common law, that in trials in that court a party is entitled to a jury of twelve men when he demands it; but if the trial proceeds with a less number, and he takes no exception on that ground, he can not afterwards avail himself of the error except by motion in arrest of judgment, which of course would be made within the time prescribed by law or the rules of court. In the absence of one party, the opposite party should see that his proceedings are regular. There is nothing in the bill of rights which would prevent the parties, by consent, from trying their causes in the law commissioner's court as heretofore with six jurors, but in such cases the consent, should always be entered on the record.

In coming to the conclusion that a jury in the court of the law commissioner must consist of twelve men, we do not wish it to be understood that it follows as a matter of course that a jury in a justice's court must likewise consist of twelve men. We are of the opinion that justices' courts, not being courts of record, are not within the constitutional

provision, and that it would be competent for the legislature to make all the causes in such courts triable by the justice alone. Juries did not form a part of the machinery of such tribunals at the common law. It is not disputed that the article in the bill of rights securing the right to a trial by jury did not extend to proceedings in courts of chancery. The legislature in its discretion may give assistance to justices in the exercise of their jurisdiction, and that may be any number of men that is deemed expedient. Moreover, from the judgments in justices' courts there is an appeal to the courts of common law-where the parties are entitled to a trial by jury unless it is waived. (Emerick v. Harris, 1 Binn. 416 ; Work v. The State of Ohio, ———, 296 ; Norton v. McLeary, 8 Ohio, N. S., 205.)

We see no errors in the giving or refusing instructions such as would warrant a reversal of the judgment. The only thing that surprises us is their number. We can not conceive how parties expect to aid juries in coming to a correct verdict by such a multitude of instructions. Instead of enlightening the jury, they serve only to confound them. It would be a great deal better if the courts would take this matter in hand and instruct the jury in such a way as would aid them in forming their verdict. From the instructions offered on both sides, the court might frame one or two which would be sufficient in most cases.

He who undertakes to drive a carriage in a crowded street must exercise a diligence proportionate to the dangerous nature of that employment. He must know that there are women and children in the street, and that their necessities compel them to be there. If one is found off the crossing, he is not therefore liable to be run over. When, by a diligence proportionate to the nature of the service in which one is employed, he can avoid injuring one who is found off the crossing, it is his bounden duty to use reasonably that diligence in order to do so. A driver who sees a child lacking discretion in the street, should exert more care to avoid doing an injury than he would use for the safety of a person whose

presumed age and experience would prompt him to take steps necessary for his own security.

There was no foundation laid for examining the defendants for each other. It was not shown that the matter offered to be proved was such that, whilst it would authorize a verdict in favor of the defendant examining his co-defendant, it would not also be favorable to the defendant who was sworn.

We do not see what the state of the health of the plaintiff's wife had to do with the case, nor the arrest of the driver.

Judgment reversed and cause remanded; Judge Ewing concurring. Judge Napton absent.

[CONTINUED TO VOL. XXXI.]

# INDEX.

## A

ABATEMENT.

See PRACTICE, 24.

ACCOUNT.

1. Where a creditor in stating an account between himself and his debtor gives a credit therein to the latter by mistake, or is induced to give such credit on terms and conditions that are not afterwards complied with by the debtor, he ought to be permitted to avail himself of these facts in a suit against the debtor to recover the item for which the credit was allowed. *Moore* v. *Albright,* 249.

ACKNOWLEDGMENTS.

See CONVEYANCE. JUSTICES' COURTS.

ADMINISTRATION.

See GUARDIAN.

1. A testator can not, by devising his lands away, deprive his executor of the power of sale for the payment of debts. *Shaw* v. *Nicholay,* 99.

ADVERSE POSSESSION.

See LIMITATION.

AGENCY.

See PRINCIPAL AND AGENT.

AGREEMENT.

See BONDS. BILLS OF EXCHANGE AND PROMISSORY NOTES. STATUTE OF FRAUDS. LIEN, 2. SLAVERY.

1. The creditors of one A. agreed to give to him and his endorsers an extension of time on their obligations. B., one of the creditors of A. signed this agreement in the following form : " B.—provided I have the same endorsers for $3,500." B. surrendered to the trustees appointed by the creditors notes to the amount of $3,500, which were cancelled and a new note given. *Held,* in a suit instituted on a note not included among those amounting to $3,500 surrendered to the trustees, that the agreement to give time did not apply to the note sued on. *Garnier* v. *Papin,* 243.

2. An agreement to give an extension of time on a promissory note constitutes no bar to an action thereon. *Id.*

3 A., B., C. and D., by written agreement, bound themselves " each to the others," that they would purchase a steamboat, contributing in

AGREEMENT—(*Continued.*)

equal shares to the payment of the purchase money, A. to act as master of the boat when purchased, and B. as clerk. The agreement contained this further provision : " And it is further agreed between the parties, that should any of them at any time after said purchase desire to sell his interest in said boat, the other parties to this agreement, or such of them as may have an interest in said boat at the time, or such person as a majority of them may select, may have the preference in purchasing said interest, provided he or they so proposing to purchase will do so on the same terms that the party so wishing to sell may be able to obtain from the other parties." *Held*, that this agreement was several only ; that each party bound himself to the others, and that two of said parties could not be sued jointly by a third for breach of the above stipulation. *Perry* v. *Kerr*, 349.

4. An agreement to dispose of property by will in a particular way, if made on a sufficient consideration, is valid and binding. *Wright* v. *Tinsley*, 389.

5. Although circumstances may render it impossible to specifically enforce such an agreement exactly, yet its substantial specific enforcement will be decreed. *Id.*

ALLUVION.

1. The principle upon which the right to alluvion is placed by the civil law—which is essentially the same in this respect as the Spanish and French law, and also the English common law—is, that he who bears the burdens of an acquisition is entitled to its incidental advantages ; consequently, that the proprietor of a field bounded by a river, being exposed to the danger of loss from its floods, is entitled to the increment which from the same cause may be annexed to it. This rule is inapplicable to what are termed limited fields, *agri limitati ;* that is, such as have a definite fixed boundary other than the river, such as the streets of a town or city. *Smith* v. *St. Louis Public Schools*, 290.

2. A lot in a town or village may be entitled to riparian privileges if bounded on a river ; yet if, as originally granted, it were bounded or limited on all sides by streets, the owner thereof would not become a riparian proprietor and entitled to alluvion by reason of the fact that the original concession or grant, besides the street, also called for the river in front. *Id.*

3. In the year 1766, the French commandant at the post of St. Louis granted and conceded to Pierre François DeVolsey a lot of ground in said village, of two hundred and forty feet front on the side of the Mississippi and fronting thereto (du côté du Mississipi et y faisant face), by three hundred feet in depth on the side of the woods (du côté du bois), having said front upon the grand (or main) street (tenant la dite face et par devant la grande rue,)'in the rear another main street (une autre grande rue), &c. The concession was bounded on the sides also by streets. *Held*, that the concession did not constitute the grantee a riparian proprietor ; that the concession was bounded by the street in front and not by the river ; that neither he nor his grantees would be entitled to alluvion formed in front of the street. *Id.*

AMENDMENTS.

See PRACTICE.

ASSAULT AND BATTERY.

See PRACTICE, 24.

ASSIGNMENT FOR THE BENEFIT OF CREDITORS.

See FRAUD AND FRAUDULENT CONVEYANCES.

1. Where deed a of assignment of goods is, on its face, in trust to the use of the grantor therein, it is fraudulent and void as against creditors, existing and subsequent, and purchasers ; and the courts will so declare as a matter of law. *Johnson* v. *McAllister, Assignee,* 327.

2. Where, however, the deed is not void on its face, and extrinsic evidence is adduced to show it to be fraudulent, the court will submit the issue of fraud, under proper instructions, to the jury, who will determine, as a matter of fact, whether the deed is fraudulent or not. *Id.*

3. The fact that a deed of assignment gives the assignee the privilege of selling the assigned goods on a credit does not render the deed void on its face. *Id.*

4. The thirty-ninth section of the act concerning voluntary assignments (R. C. 1855, p. 210) does not prevent a debtor from assigning his property for the benefit of a portion only of his creditors ; said section operates to invalidate all provisions in such assignments which give preferences among the designated creditors; the designated creditors are entitled to be paid *pro rata* out of the proceeds of the assigned property. *Id.*

5. The reservation to the grantor in a deed of assignment for the benefit of certain designated creditors of any surplus there may be after the payment of the debts of such preferred creditors does not render the deed void on its face. *Id.*

6. A general assignment made by a debtor for the benefit of his creditors is not entirely invalidated by the fact that some of the claims are fictitious and fraudulent, and known to be such by the assignee ; the participation of the assignee in the fraud contemplated by the debtor furnishes no obstacle to the enforcement of the rights of the *bona fide* creditors. If the assignee is disposed to promote the fraudulent purposes of the grantor, he may be displaced and another appointed. The fraudulent claims can be contested as well in the administration of the effects by the assignee, under the orders of the court, as in a suit by an attaching creditor. *Pinneo* v. *Hart,* 561.

7. Such a deed of assignment would not, under such circumstances, be void, although all the honest creditors should repudiate it. *Id.*

ATTACHMENT.

1. Where in an attachment suit the defendant files a plea in the nature of a plea in abatement putting in issue the truth of the facts alleged in the plaintiff's affidavit, and the issue raised by this plea is found for the plaintiff, the defendant should be allowed time, if he ask it, without terms, to file an answer in bar of the action. *Bourgoin* v. *Wheaton,* 215.

2. The objections to a writ of attachment issued in aid of a suit, that the

ATTACHMENT—(*Continued.*)

caption of the writ and affidavit does not correspond with the title of the suit; that the cause of action set forth in the petition is improperly described in the affidavit and writ, are waived by the filing of a plea in the nature of a plea in abatement. *Henderson* v. *Drace*, 358.

3. No attachment should be dissolved on account of the insufficiency of the affidavit, if the plaintiff shall file a good and sufficient affidavit in such time and manner as the court may direct. (R. C. 1855, p. 254, § 53.) *Id.*

4. If the bond filed by the plaintiff in an attachment suit be insufficient, he has a right to file another. (R. C. 1855, p. 242, § 9.) *Id.*

5. An attachment issued on the 13th of August, the affidavit and bond, which were not dated, were certified by the clerk to have been acknowledged on the 18th of August. *Held*, that, although this was probably a clerical error, yet if the affidavit and bond were not formally filed until five days after the writ of attachment issued, this would not authorize the quashing of the writ. *Id.*

AVERAGE.

See GENERAL AVERAGE.

# B

BAILMENT.

See LIEN.

BANKERS.

1. By the forty-fourth section of the first article of the act concerning banks and banking institutions, approved March 2, 1857, all checks drawn on bankers and made payable in currency, were made payable in silver and gold or the notes of specie-paying banks. *Morrison* v. *McCartney*, 183.

BANKS.

1. The City of Lexington was authorized by its charter "to levy and collect taxes upon real and personal property within the city, not exceeding," &c. (Sess. Acts, 1845, p. 161.) The Farmers' Bank of Missouri was incorporated by an act of the general assembly approved March 2, 1857, and established in the city of Lexington. (Sess. Acts, 1857, p. 34.) By the thirty-second section of said act it was provided as follows : " In consideration of the privileges granted by this act to the banks incorporated in this state, each banking company agrees to pay to the state annually one per cent. on the amount of the capital stock paid in by the stockholders other than the state, which shall be in full of all bonus and taxes to be paid to the state by the respective banks." By ordinance shares of stock in incorporated companies (excepting manufacturing companies) were subjected to taxation for city purposes. It was further provided that persons owning shares of stock that were taxable were not required to deliver to the assessor a list thereof, but the president, or other chief officer, of such corporation was required to deliver to the assessor a list of all shares of stock held therein, and

BANKS—(*Continued.*)

the names of the persons holding the same. For a violation of this provision on the part of such officer by a failure to hand in such a list, the ordinance attached a penalty of one thousand dollars. *Held*, that the Farmers' Bank of Missouri was subject and liable to the tax thus imposed; that the penalty imposed upon the president for a refusal to hand in the required list to the assessor was legal and valid. *City of Lexington* v. *Aull*, 480.

2. By the thirty-second section of the first article of the act of the general assembly concerning banks and banking, approved March 2, 1857, (Sess. Acts, 1857, p. 22,) the banks were exempted from taxation for state purposes alone. The shares of stock in said banks, and the money and notes of other banks in their possession, are subject to taxation for local municipal purposes. `Town of Paris` v. *Farmers' Bank of Missouri*, 575.

3. The town of Paris is authorized by its charter to tax for municipal purposes the money and bank notes of the other banks in possession of the branch at Paris of the Farmers' Bank of Missouri. *Id.*

BILL OF PEACE.

See EQUITY, 11.

BILLS OF EXCHANGE AND PROMISSORY NOTES.

1. One B. F. C. C., member of a partnership firm doing business under the style of "C. & Co.," executed a promissory note in his own name, B. F. C. C., and procured the signatures of persons not members of said firm as endorsers for his accommodation; before procuring the sale of the note, and without the knowledge of said endorsers, he added to the signature the words "& Co." — thus making it "B. F. C. C. & Co." The same was then sold for his accommodation. *Held*, in a suit by the purchaser against the maker and endorsers, that the endorsers were discharged by the alteration. *Haskell* v. *Champion*, 136.

2. No written assignment of a promissory note is necessary in order to entitle the holder to sue thereon in his own name. *Willard* v. *Moies*, 142.

3. The assignee of a non-negotiable note can maintain no action against the assignor unless he has first used due diligence to recovery of the maker, or unless such maker is a nonresident or insolvent. (R. C. 1855, p 323.) *Ivory* v. *Carlin*, 142.

4. A drawer of a check is not discharged by any laches of the holder in not making due presentment thereof, unless he has suffered loss or injury by the delay. *Morrison* v. *McCartney*, 183.

5. A., on the 2d of October, 1857, drew a check on B., a banker, in favor of C., who, on the same day, transferred the same for value to D. On the 3d of October, about two o'clock in the afternoon, the banking-house of B. suspended payment. On the 6th of October, 1857, A., who had previously instituted suits by attachment against B. to recover the amount of his deposits, compromised the same and received his deposits. The check was not presented until January 29, 1858, when payment was refused. The check was then duly protested and notice

BILLS OF EXCHANGE AND PROMISSORY NOTES—(*Continued.*)

given. *Held*, in a suit by D.; the holder, against A., the drawer, that the latter was not discharged by the delay. *Id.*

6. By the forty-fourth section of the first article of the act concerning banks and banking institutions, approved March 2, 1857, all checks dawn on bankers and made payable in currency were made payable in silver and gold or the notes of specie-paying banks. *Id.*

7. In the case of the non-payment of a negotiable promissory note, which has been negotiated, the four per cent. damages, allowed by the seventh section of the act concerning bills of exchange and negotiable promissory notes, (R. C. 1855, p. 294,) can not be recovered, if payment of the principal sum, with the interest and charges of protest be made within twenty days after demand or notice of dishonor. *Farrell* v. *Fritschle*, 190.

8. If suit be brought on such a note within twenty days from the maturity of the note, the plaintiff will not be entitled to the four per cent. damages. *Id.*

9. A party who writes his name on the back of a promissory note of which he is neither payee nor endorsee, is, *prima facie*, a maker of the note, and the payee is entitled to recover against him without proof of demand on the maker and notice of nonpayment. *Baker* v. *Block*, 225.

10. An agreement to give an extension of time on a promissory note constitutes no bar to an action thereon. *Garnier* v. *Papin*, 243.

11. The taking of a promissory note does not extinguish an open account; upon the production of the note a recovery may be had on the account. *McMurray* v. *Taylor*, 263.

12. Where a note has been taken for an indebtedness evidenced by open account, and a receipt given therefor, a statement in the receipt to the effect that the note was taken "in settlement of the account" would not be sufficient, alone, to authorize the court to submit to the jury, by instruction, the issue whether the note was taken in payment or satisfaction of the account. *Id.*

13. A promissory note given on Sunday for an antecedent debt is valid and binding. (R. C. 1855, p. ——.) *Kaufman* v. *Hamm*, 387.

14. Where the payee of a negotiable promissory note endorses the same before maturity, a payment made to him before his endorsement will not extinguish the debt so far as the endorsee is concerned, unless the latter had notice of the payment at the time of such endorsement. *Grant* v. *Kidwell*, 455.

15. An antecedent liability incurred by the endorsee of a negotiable promissory note, assigned before maturity, as surety for the payee and endorser, is a sufficient consideration to support the title of such endorsee; the endorsee, however, in such case, is a holder for value, in the sense that will entitle him to recover, against the maker of the note, irrespective of the equities between such maker and the payee, only to the extent of the liability incurred by him as surety for the payee. *Id.*

16. Where the vendor of land, who has given a title bond only conditioned for the execution of a deed upon the payment of the purchase money, and who has not executed a deed of conveyance to the purchaser,

BILLS OF EXCHANGE AND PROMISSORY NOTES—(*Continued.*)

assigns a note given for the purchase money to another, the equitable lien of the vendor will pass to the assignee and he may enforce the payment of the note against the land specifically. *Adams* v. *Cowherd*, 458.

BOATS AND VESSELS.

1. Where goods are shipped on board a barge to a port on the western waters, and the barge on the voyage is accidentally grounded and in danger of being lost by the perils of navigation together with the goods on board, and it becomes necessary, for the purpose of saving the barge and lumber from destruction, to unload and reload the same, and the master does so load and reload and take care of the barge and goods when so unloaded, it is a case for contribution, of general average. *Dilworth* v. *McKelvy*, 149.

BONA FIDE PURCHASER.

See EQUITY, 3. VENDORS AND PURCHASERS.

BONDS.

1. To constitute a bond signed by a person a valid bond against him, it must be shown to have been delivered to the obligee. *McPherson* v. *Meek*, 345.

2. Where a person, alleging that he had as surety for another paid a bond in which the latter was principal, seeks to recover the sum so paid of the alleged principal, he must show that he became a party in the character of surety at the instance of the alleged principal, or that the latter assented to it, unless this fact appear from the instrument itself. *Id.*

# C

CARE.

See TORTS. TRESPASS. RAILROADS.

1. A servant, who is injured by the negligence or misconduct of his fellow servant, can maintain no action against the master for such injury, unless the servant, by whose negligence the injury is occasioned, is not possessed of ordinary skill and capacity in the business entrusted to them, and the employment of such incompetent servant is attributable to the want of ordinary care on the part of the master. *McDermott* v. *Pacific Railroad Co.*, 115.

2. A servant of a railway company could not recover against the company for an injury caused by the falling of a bridge, unless such injury was caused by incompetent servants or agents of the company whose employment might be traced to the negligence of the company, or to a defect in the bridge attributable to the fault of the company. *Id.*

3. He who drives a carriage in a crowded street should exercise a due diligence proportionate to the dangerous nature of the employment. *Vaughn* v. *Scade*, 600.

CLAIM AND DELIVERY OF PERSONAL PROPERTY.

See PRACTICE.

1. Where a constable or other officer, previous to the levy of an execution, demands and obtains an indemnification bond of the plaintiff under the first section of the sheriff's and marshal's act of March 3, 1855, (Sess. Acts, 1855, p. 464,) he will be exempt from liability on his official bond at the suit of a claimant of the property levied on and sold other than the defendant, although such claimant may have claimed the property of the officer orally and not in conformity to the third section of said act. *State, to use of, &c.*, v. *Watson*, 122.

2. It is not the failure of the claimant to give notice of this claim to the officer in the form required by the third section of said act that exempts the officer from liability to such claimant; it is the taking of an indemnification bond in conformity to the provisions of the first section of said act. *Id.*

3. The exemption from liability guaranteed to an officer levying an execution by the fifth section of the act of March 3, 1855, (Sess. Acts, 1855, p. 464,) where an indemnification bond has been given as required by that act, extends to an action of replevin brought against such officer. *St. Louis, Alton & Chicago Railroad Co.* v. *Castello*, 124.

4. Where, in an action for the possession of personal property, under the seventh article of the practice act (R. C. 1855, p. 1242), the plaintiff obtains possession of the property upon giving bond, and fails to prosecute the action with effect, and it appears that the defendant has only a special interest in the property *as against the plaintiff*—for example, a lien thereon for money due from the plaintiff to himself, or a mere claim to possession for a limited period ; in such case judgment should not be rendered in favor of the defendant for the return of the property or the payment of the entire value of the property, but the value of the interest of the defendant in the property should be assessed, and judgment should be rendered in favor of the defendant for the value so assessed, or the return of the property until such value be paid, at the option of the defendant. *Dilworth* v. *McKelvy*, 149.

5. Where the defendant has only a special interest and the plaintiff is a stranger to the title, the entire value may be recovered by the defendant as special owner, and he will be answerable over to the general owner to the extent of the latter's interest; in such case, the general value of the property would be assessed without regard to the value of the special interest. The judgment in each case must be modified by the circumstances, so that the merits of the controversy may, if possible, be settled in one action. *Id.*

6. In suits for the possession of personal property, under the eighth article of the practice act of 1849 (Sess. Acts, 1849, p. 82,) if the defendant gave a forthcoming bond, as allowed by said article, with sureties, judgment could be rendered against the sureties only in the mode pointed out in the ninth section of said article. *Baldwin* v. *Dillon*, 429.

7. In actions for the possession of personal property, the plaintiff, if he succeed, has the choice of taking the property or its value. By the value of the property is meant its value at the time of its valuation by

CLAIM AND DELIVERY OF PERSONAL PROPERTY—(*Continued.*)

the jury. If slaves, for example, are sued for, and they die in the hands of the defendant during suit, the plaintiff has no just claim for more than damages for their detention up to the time of their death. If the depreciation in value or death be produced by ill-treatment or neglect, or the slaves be sold to another, the rule may be different. *Pope* v. *Jenkins*, 528.

CONCESSION.

See LANDS AND LAND TITLES.

CONFLICT OF LAWS.

See MARRIAGE. FRAUD AND FRAUDULENT CONVEYANCES.

1. It is well settled, as a general proposition, that a marriage, valid according to the law or custom of the place where it is contracted, is valid everywhere. *Johnson* v. *Johnson's Adm'r*, 73.

CONSTITUTIONAL LAW.

See RAILROADS, 4.

1. The general assembly may authorize a municipal corporation to macadamize streets within its limits, and to apportion and charge the cost of such macadamizing on the adjoining lots in proportion to their front. *City of St. Joseph* v. *Anthony*, 537.

2. In order to authorize a municipal corporation to recover the amount charged against an adjoining lot on account of the macadamizing of a street, a substantial compliance with the law must be shown; an observance of all the formalities prescribed by the ordinances of the corporation, which are directory, is not required. If the work has been done and in a manner satisfactory to the officer entrusted with its supervision, and has been received by the corporation and paid for, a *prima facie* case is made out. The defendant may show that there has been a neglect of duty on the part of the authorities entrusted with the execution of the work, and if this neglect or omission has injured him, such facts may constitute a defence. *Id.*

3. In all trials in courts of record in which a party is entitled to a jury, the jury must consist of twelve men. The right to demand in such cases a jury of twelve men is a constitutional right. *Vaughn* v. *Scade*, 600.

4. The provision in the act organizing the St. Louis law commissioner's court prescribing that "in all jury trials in said court the jury shall consist of six lawful jurors, or a less number if the parties shall consent thereto," is unconstitutional; juries in that court, as in all courts of record, must consist of twelve men. (R.C. 1855, p. 1597, § 6.) *Id.*

5. If, however, a trial in said court proceeds with a less number than twelve jurymen, and no exceptions are taken on that ground, a party can not avail himself of the error except by motion in arrest of judgment, which must be made within the time prescribed by law or the rules of court. *Id.*

6. There is nothing in the bill of rights which prevents parties from trying, by consent, their causes in the St. Louis law commissioner's court with six jurors, as provided in the act organizing that court; the consent should always, in such cases, be entered of record. *Id.*

CONTRIBUTION.

See BOND, 2.   GENERAL AVERAGE.

CONVEYANCE.

See ASSIGNMENTS FOR BENEFIT OF CREDITORS.   FRAUD AND FRAUD-
ULENT CONVEYANCES.   LANDS AND LAND TITLES.   PRACTICE, 31.

1. Where a defendant in ejectment seeks to show an outstanding title in
another, and offers in evidence a deed executed by the same parties
under whom plaintiffs claim, he may by extrinsic evidence, if the de-
scriptions and calls of the two deeds are different but not repugnant,
show that the calls are such as will make the deed under which defen-
dant claims embrace the same land conveyed to plaintiffs.  *Schultz* v.
*Lindell,* 310.

2. One A. by deed conveyed to the children of his brother a female slave
with her increase ; the deed provided that the property conveyed should
remain with the wife of said brother for the use and support of herself
and said children during her life, or so long as she might " remain his
widow" after his death.   The deed also further provided that should
she have any other children while the wife of said brother, they should
be entitled to a share of the property with the children living at the
date of the deed ; at the death of said wife equal division to be made
among the said children.   *Held,* that this deed conferred no such inter-
est on the wife as was subject to execution ; that the legal title to the
slaves was not in her.  *McLaurine* v. *Monroe's Adm'r,* 462.

3. By the third section of the territorial act of February 1, 1817, (1 Terr.
Laws, p. 543,) a justice of the peace of Missouri territory was authorized
to take acknowledgment of deeds where the lands conveyed lay out-
side the county of which he was justice.  (NAPTON, Judge, *dissenting.*)
*Duly* v. *Brooks,* 515.

CORPORATIONS.

See RAILROADS.

1. Acts of corporations may be proved in the same manner as the acts of
individuals; if there be no record evidence, they may be proved by
the testimony of witnesses.  *Newman* v. *Southern Hotel Co.,* 118.

2. *Held,* in a suit on a subscription to the stock of an incorporated com-
pany, that it was competent for the defendant to show by oral testi-
mony, in the absence of record evidence, that the subscription list,
upon which defendant's name appeared, was annulled and abandoned,
and that another subscription was subsequently opened and made the
basis of the organization of the company by the stockholders.  *Id.*

3. The fact that a corporation has a seal does not prevent its agents from
binding it by contracts not under seal.  *Buckley* v. *Briggs,* 452.

4. It does not follow, because a corporation is by its charter prohibited
from dealing in commercial paper, that it may not lawfully receive and
sell notes given for the sale of its lands.  *Id.*

COSTS.

See PLEADING, 3.   PRACTICE, 25.

COUNTER–CLAIM.

See PLEADING.

CRIMES AND PUNISHMENTS.

See PRACTICE AND PROCEEDINGS IN CRIMINAL CASES.

1. It is the right and privilege of a jury in a criminal prosecution to determine the facts submitted to them for decision without regard to and uninfluenced by the opinion the judge presiding at the trial may have as to the facts; the judge can not refuse to receive a verdict returned by the jury on the ground that it is manifestly against the evidence. *The State* v. *Ostrander*, 13.

2. If the verdict returned by a jury in a criminal prosecution be sensible and responsive to the issue, it is the duty of the court to receive it and have it recorded. *Id.*

3. An affirmative verdict of guilty of murder in the second degree is responsive to an indictment for murder in the first degree; and however strong may be the opinion of the judge that such a verdict is unwarranted by the evidence, and although no instructions whatever may have been given bearing upon the law of murder in the second degree, it would be improper for the judge to refuse to receive such a verdict and order it to be recorded. *Id.*

4. Stealing committed in a dwelling-house is grand larceny irrespective of the value of the property stolen, and may be punished as such under the thirty-second section of the third article of the act concerning crimes and punishments. (R. C. 1855, p. 577.) *State* v. *Ramelsburg*, 26; *State* v. *Smith*, 114.

5. The twenty-first section of the ninth article of the act concerning crimes and their punishments (R. C. 1855, p. 642) is properly invoked by an accused person only after trial and conviction; the accused should be tried as if he were an adult, and afterwards, upon suggestion, the court should ascertain the age, and if he be found to be under sixteen years of age, the court should adjust the punishment in accordance with the statute. *State* v. *Gavner*, 44.

6. If a person take and lead away a horse any distance with a felonious intent, the asportation is complete and he is guilty of larceny, although the horse is not removed from the enclosure or lot in which he is at the time of such felonious taking and leading away. *The State* v. *Gazell*, 92.

7. In the trial of a criminal case, the legal existence of a banking corporation may be proved by general reputation. (R. C. 1855, p. 1193, § 23.) This rule is applicable to the case of a corporation organized under the general banking law of another state. *State* v. *Fitzsimmons*, 237.

8. Where a statute, on which an indictment is founded, describes or enumerates the offences disjunctively, the indictment, if it contain only one count, should charge them conjunctively if they are not repugnant; as, where the statute makes it an offence to "sell, exchange, *or* deliver," &c., for any consideration, any falsely made note, &c., it is proper that the indictment should charge the offences conjunctively, that the accused did sell, exchange *and* deliver, &c. If the offences are not repugnant, the indictment will not be liable to the objection that several offences are joined in the same count. *Id.*

9. It is no defence to an indictment, founded on the ninth section of the

CRIMES AND PUNISHMENTS—(*Continued.*)

fourth article of the act concerning crimes and punishments, (R. C. 1855, p. 591, § 9,) for selling, exchanging and delivering to another certain falsely made, forged and counterfeit bank notes of a certain denomination, that the bank named never issued genuine bills of the character or denomination of those described in the indictment. *Id.*

10. To constitute a sale or exchange within the meaning of the said section, it is not necessary that the accused should have parted with his entire interest in the counterfeit paper for a consideration paid; the transaction would, it seems, be within the statute though the sale should be on credit, or, if there were a delivery, if it were understood that they should be returned in case they were not sold. *Id.*

11. Perjury is, by statute, a felony. An indictment for perjury must charge that the act of false swearing was done feloniously. *State* v. *Williams*, 364.

12. It is the province of the court, and not of the jury, to determine whether the fact sworn to was material in the judicial proceeding in which the perjury is alleged to have been committed. *Id.*

13. In trials for perjury it is improper to instruct the jury that the law presumes the declarations of a party against himself to be true, when the object of such an instruction is to make the declarations evidence of the falsity of the oath. The weight of such declarations is to be determined by the jury. Of themselves they are not sufficient to convict one of perjury. *Id.*

14. In an indictment for perjury, the false swearing must be charged to have been done feloniously. *State* v. *Terry*, 368.

15. Grand jurors may indict on their own information or knowledge; they may indict a person for perjury in testifying before themselves. *Id.*

16. A person may commit perjury by falsely swearing, before a grand jury, that he did not know of any person who had, within twelve months, bet any money or property upon any game of cards in the county. *Id.*

17. An indictment is rendered bad by reason of the omission of the words: "against the peace and dignity of the state." *State* v. *Pemberton*, 376.

18. The concluding clause of the twenty-seventh section of the fourth article of the act regulating proceedings in criminal cases, (R. C. 1855, p. 1176, § 27,) providing that no indictment shall be deemed invalid, nor the trial, judgment or other proceedings thereon be stayed, arrested or in any manner affected, "for any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits," should, at least, be limited in its application to imperfections of the class previously enumerated in said section. *Id.*

19. An indictment for murder, after charging an assault by the accused upon one H. D. and the felonious infliction of a mortal wound upon the latter by stabbing with a knife, whereof the said H. D. died, concluded as follows: "And so the jurors aforesaid, upon their oaths aforesaid, do say that the said C. H. P., in manner and form and by the means aforesaid, feloniously, wilfully, maliciously, deliberately, premeditatedly, on purpose, and of his malice aforethought, did kill and murder; contrary to the form of the statute, and against the peace and dignity.

CRIMES AND PUNISHMENTS—(*Continued.*)

of the state. *Held,* that the indictment was bad, inasmuch as it did not designate the person murdered. *Id.*

20. Where a person is indicted for a felonious assault and is acquitted, the acquittal is a bar to any further proceedings; an appeal can not be prosecuted to the supreme court by the State. *State* v. *Palmer,* 385.

21. An indictment charging that the defendant on, &c., at &c., "did then and there feloniously assault one J. D. with a certain handle of a hoe, a deadly weapon, by feloniously assaulting and striking him, the said D., with the said hoe handle, with intent, in so doing, him the said D. then and there feloniously to maim, wound and disfigure, contrary," &c., is a good indictment under the thirty-eighth section of the second article of the act concerning crimes and punishments. A felonious maiming is a felony. *State* v. *Thompson,* 470.

22. An indictment charging that the defendant, "at, &c., on, &c., feloniously, burglariously, and forcibly did break into and enter a certain meat-house and building, the property of one B., then and there being, by forcibly breaking the lock and door thereof, in which said meat-house and building there were then and there, at the time aforesaid, goods, wares and merchandise, and other valuable things, kept and deposited; and that the said H. so brake into and entered said meat-house and building, as aforesaid, with intent then and there to commit a larceny, by then and there feloniously stealing, taking and carrying away the goods, chattels and personal property of the said B.; and five pieces of pork, &c., [describing the articles and giving their values;] all of the goods, chattels and personal property and valuable things of the said B., then and there being found in said meat-house and building, he, the said H., did then and there feloniously steal, take and carry away, contrary," &c., is a good indictment under the sixteenth section of the third article of the act concerning crimes and punishments. (R. C. 1855, p. 573, § 16.) *The State* v. *Henley,* 509.

23. Where a person is prosecuted for both burglary and larceny in the same indictment, and is convicted of both offences, he may, under the nineteenth section of the third article of the act concerning crimes and punishments (R. C. 1855, p. 574), be punished by imprisonment in the penitentiary, in addition to the punishment prescribed for the burglary, not exceeding five years. The jury would be authorized in such case to assess the punishment for the larceny, in addition to that for the burglary, at any period not exceeding five years. *Id.*

24. A declaration made by a child two days before its death to a person who inquired of him the cause of the swollen appearance of his face, that "papa did it," *held* to be inadmissible in evidence against the father on his trial for the murder of the child, the declaration not being a part of the *res gestæ,* nor being made *in articulo mortis.* *State* v. *Dominique,* 585.

CURRENCY.

See BANKERS.

# D

DAMAGES.

See SLANDER, 3.

1. Wherever the jury is authorized, in a case of unliquidated damages, to allow interest in estimating the damages, the interest is not recoverable as such in addition to the damages assessed by the jury, but must enter into the estimate made by the jury and be found as a part of the damages assessed. *Dozier* v. *Jermain*, 216.

2. An action to recover damages for trespass to land can be maintained upon possession alone. Where the possession of the plaintiff is admitted, the defendant may put in issue his possessory right, but to sustain such a defence he must show a superior right in himself or in another under whom he claims. If the defendant be a mere intruder he can not, the plaintiff's possession being admitted or proven, show a want of title in the plaintiff. *Reed* v. *Price*, 442.

3. Where the plaintiff, in an action for trespass to land, claims in his petition ownership and possession, and the possession is admitted or proven, the defendant, if he be a mere intruder, can not be permitted to introduce evidence to show a want of title in the plaintiff in mitigation of damages. *Id.*

4. In actions for the possession of personal property, the plaintiff, if he succeed, has the choice of taking the property or its value. By the value of the property is meant its value at the time of its valuation by the jury. If slaves, for example, are sued for, and they die in the hands of the defendant during suit, the plaintiff has no just claim for more than damages for their detention up to the time of their death. If the depreciation in value or death be produced by ill-treatment or neglect, or the slaves be sold to another, the rule may be different. *Pope* v. *Jenkins*, 528.

5. A. at St. Louis shipped flour consigned to B. in Boston. C. at New Orleans, to whom said flour was shipped to be forwarded by him to B. in Boston, wrongfully converted the same. *Held*, in a suit brought by B. against C., that the measure of damages was the value of the flour at the place of destination. *Farwell* v. *Price*, 587.

DELIVERY.

See BONDS.

DEMAND.

See PLEADING, 3.

DESCENTS AND DISTRIBUTIONS.

1. At common law a bastard had no inheritable blood ; he could transmit an estate by inheritance only to the heirs of his body; if he died without issue and intestate leaving real estate, it escheated to the state. *Bent's Adm'r* v. *St. Vrain*, 268.

2. The common law disabilities attaching to bastards with respect to their power of inheriting or transmitting by descent still attach to them in this state except so far as they have been removed by the provision

DESCENTS AND DISTRIBUTIONS—(*Continued.*)

that "Bastards shall be capable of inheriting and transmitting inheritance on the part of their mother in like manner as if they had been lawfully begotten of such mother." (R. C. 1845, p. 422.) *Id.*

3. This provision does not render a bastard capable of transmitting an estate by descent to his mother or to his illegitimate brothers. *Id.*

4. One A. died in 1848 in New Mexico, leaving two illegitimate children, B. and C., the children of the same mother. He devised certain real estate in Missouri to said children. B. died leaving said C. and the mother surviving. Letters of administration were taken out upon the estate of A., and on final settlement a sum of money arising from the accruing rents of said real estate remained in the hands of the administrator. *Held,* that B. could transmit his portion of the estate by descent neither to his mother nor to C., his brother; that B.'s estate escheated to the state. *Id.*

# E

EMANCIPATION.

See SLAVERY.

EQUITY.

See PRACTICE, 30, 31. FRAUD AND FRAUDULENT CONVEYANCES. SPECIFIC PERFORMANCES.

1. A. became possessed and took charge of two slaves and a certain amount of money as a trust fund for the benefit of his sister; he appropriated the money and the proceeds of the sales of the negroes to the purchase of a tract of land in this state, and in removing his sister and her family from Kentucky to this state; this purchase was made in good faith, and the property was subsequently conveyed to the sister and her children in satisfaction of the trust, and was occupied by them until the death of the mother, and was afterwards divided by proceedings in partition among her heirs. *Held,* in a suit instituted many years after the date of the original transaction, that there was no claim in equity against A. or his estate growing out of the receipt of the trust fund. *Hickman* v. *Wood's Exec'r,* 199.

2. Where property is conveyed in trust, *bona fide,* to secure the payment of certain debts due, and a third person, by virtue of a sale under a judgment against the grantor in the deed of trust, subsequently obtains title, subject to such deed of trust, to a portion of the property embraced in said deed, such purchaser will not be entitled to intervene in proceedings instituted to enforce the deed of trust against all the property embraced in it, and to require that that part of the property in which he has no interest shall first be appropriated to the payment of the trust debt. *Fleshman* v. *Shepard,* 324.

3. One B. held a receipt issued to him by the receiver of the United States land office upon the entry by him of a tract of forty acres; also the register's certificate of the location by him of a military land warrant. No patents had been granted by the United States. B. assigned

40—VOL. XXX.

EQUITY—(*Continued.*)

said receiver's receipt to W. by written endorsement as follows : " For value received, I assign the within to W. as collateral security, this 15th day of May, 1857. [Signed] B." At the same time he assigned the register's certificate by an endorsement identical with the above, with the exception that it was assigned "as counter security." *Held,* that parol evidence might be adduced to show that these assignments were made to secure two certain promissory notes executed by said B. in favor of said W. ; that the said assignments created an equitable lien or mortgage in favor of W. upon the lands embraced in said receipt and certificate. *Wallace* v. *Wilson,* 335.

4. To entitle a person to invoke the aid of the rule that protects a *bona fide* purchaser as against a prior equity, it must appear that he made his purchase and paid the purchase money before he had knowledge of such prior equity ; he should in his answer be full and explicit as to the time and terms of his purchase, and the payment of the purchase money. *Id.*

5. The doctrine, that if a party, acting in ignorance of a plain and settled principle of law, is induced to give up a portion of his indisputable property to another under the name of a compromise, a court of equity will grant him relief, *is to be understood with many qualifications* ; family compromises upon doubted, if not doubtful, rights and mutual claims and mutual ignorance of the law, are generally sustained by the courts ; to authorize the courts to grant relief there should, it seems, be something more than mere ignorance of the law ; there should be imposition or undue influence. *Faust's Adm'r* v. *Birner,* 414.

6. Where a party seeks the specific enforcement of a contract to convey land, and a third person, not a party to such suit as originally instituted, who claims the same land by an alleged superior title under the person against whom such specific enforcement is sought, desires to be made a party, he may well be permitted to come in and defend ; if a decree as between the original parties to the suit would affect his rights injuriously—as by casting a shadow on his title—he would have a *right* to be heard. *Carter* v. *Mills,* 432.

7. One M., residing in the year 1856 in the state of California, owned certain lots adjoining the city of St. Joseph, Missouri. He had in St. Joseph an agent authorized to sell said lots for a specific sum. An uncle of M., a surgeon in the United States army, stationed at Fort Columbus, New York harbor, was also made acquainted with his wish to dispose of said lots. An offer by one G. to purchase said lots was transmitted through said uncle to M. in California. M. thereupon executed a deed dated in California, October 6, 1856, conveying said lots to G., and forwarded the same by mail to the uncle at Fort Columbus, where it was received by him about December 1, 1856, and immediately handed over to Gibbs upon his paying the purchase money. In the mean time, the agent of M. at St. Joseph had, on the 20th of October, 1856, in good faith, entered into a written contract to sell said lots to one C. C., on the 29th of Nov'r, 1856, instituted a suit against M. for

# INDEX. 623

EQUITY—( *Continued.*)

the specific enforcement of this contract. M., being a nonresident, was notified by publication, but made default. G., on his own motion, was admitted to defend, against the objection of the plaintiff. *Held*, that G. was, under the circumstances, properly admitted to defend; that having the legal title and a prior equity—the acceptance of the offer of G. being prior to the contract with C.—his title would prevail over the naked agreement to convey to C. *Id.*

8. The vendor of an equitable title has a lien for the unpaid purchase money to the same extent as the vendor of the legal title. *Bledsoe* v. *Games*, 448.

9. One who purchases property from another, knowing that the vendor has no right to the same and that another claims it, may, in equity, be treated as a trustee for the true owner. The owner may also maintain an action at law in the nature of an action of trespass. *McLaurine* v. *Monroe's Adm'r*, 462.

10. One P., in Kentucky, in the year 1843, being insolvent, mortgaged his property, including a slave named Ellen, to secure certain liabilities. No proceedings to foreclose the mortgage were instituted, but the mortgagees set up the property for sale at public auction, P. being present and consenting to the course pursued. The mortgagees purchased the slave Ellen at this sale, took and kept possession of her for two years and then sold her to one M. for a full price. M. gave said Ellen to the children of P. in 1846, and executed a deed to them in 1850, which was duly recorded in Kentucky. In 1851 P. moved with his family to Missouri, and in the same year sold said slave to one J. *Held*, in a suit for the possession of said slave and her increase, brought by the children of P. against said J., that, whether P.'s equity of redemption was extinguished or not by the sale by the mortgagees in Kentucky, the legal title was in the plaintiffs; that such equity of redemption, if unextinguished, did not stand in the way of a recovery by plaintiffs, the defendant not wishing to redeem. *Pope* v. *Jenkins*, 528.

11. A bill of peace to quiet title can not be maintained where the title has not been called in question in actions at law in the nature of actions of ejectment. *Marmaduke* v. *Hannibal & St. Joseph Railroad Co.*, 545.

ESCHEAT.

See DESCENTS AND DISTRIBUTIONS.

ESTOPPEL.

1. There may be an *estoppel in pais* as to the boundary line between two adjoining proprietors although no express agreement may have been made between them as to the location actually made; nor is it essential that the proprietor claiming the benefit of the estoppel should enclose up to the line; it is sufficient, if it would work a practical fraud upon him, to allow the other to disturb a location made, and acquiesced in, by himself. *Lindell* v. *McLaughlin*, 28.

2. The doctrine that possession of part is possession of the whole is inapplicable to such a case. *Id.*

EVIDENCE.

See MARRIAGE. EQUITY, 3. JUDGMENTS OF SISTER STATES. INSURANCE, 8. PRINCIPAL AND AGENT, 3.

1. Where the legitimacy of children is called in question, especially after their death, and after a great lapse of time, every reasonable presumption should be indulged in in favor of legitimacy; very slight circumstances are sufficient to authorize a court or jury to find the existence of a marriage. *Johnson* v. *Johnson's Adm'r*, 73.

2. The admission of testimony that is merely irrelevant, and which could not have influenced the jury in forming their verdict, is no ground for the reversal of a judgment by the supreme court. *Picker* v. *Haidorn*, 92.

3. Acts of corporations may be proved in the same manner as the acts of individuals; if there be no record evidence, they may be proved by the testimony of witnesses. *Southern Hotel Co.* v. *Newman*, 118.

4. *Held*, in a suit on a subscription to the stock of an incorporated company, that it was competent for the defendant to show by oral testimony, in the absence of record evidence, that the subscription list, upon which defendant's name appeared, was annulled and abandoned, and that another subscription was subsequently opened and made the basis of the organization of the company by the stockholders. *Id.*

5. Parol evidence is inadmissible to incorporate with a written instrument an oral agreement made contemporaneously with such instrument. *Walter* v. *Engler*, 130.

6. The affidavits and accounts of loss constituting the preliminary proofs furnished by the insured to the insurance company are evidence that the insured has complied with the stipulations of the policy in this respect; they are not evidence in favor of the insured as to the amount of the loss. *Newmark* v. *Liverpool & London Fire & Life Insurance Co.*, 160.

7. The admissibility of the testimony of skilled witnesses is, as a general rule, confined to a case where, from the nature of the subject, facts disconnected from such opinions can not be so presented to the jury as to enable them to pass upon the question with the requisite knowledge and judgment. *Id.*

8. Recitals in a deed of conveyance are not evidence in behalf of the persons claiming under the deed. *Fine* v. *St. Louis Public Schools*, 166.

9. A. served as mate on board a steamboat from April, 1854, to August, 1854, when the boat was laid up. When the boat stopped running, a portion of A.'s wages was due him. The boat commenced running again in October, and continued until December, 1854, A. serving as mate. As late as December only a portion of the wages due for services rendered previous to August was paid. A. also served as mate on board said boat from March, 1855, to July, 1855. The receipts entered in the books of the boat during this last mentioned period showed that A. was paid in full for each trip of the boat. *Held*, that upon these facts there was no legal presumption of the payment of the sum due A. when the boat was laid up in August, 1854. *Bougher* v. *Kimball*, 193.

10. A. executed a negotiable note in favor of B. The note was endorsed

EVIDENCE—(*Continued.*)

by B. in blank. This endorsement was made by C. as agent of B., and under or following the name of B. was the following : " Without recourse, C." D., the person to whom the note was thus endorsed, transferred the same for-value to E. *Held*, inasmuch as B.'s endorsement seemed to be unqualified and such as to attach to him a general liability, that it was immaterial what understanding may have existed between C. and D. ; it could constitute no defence to B. as against E., a subsequent *bona fide* holder, without notice of such agreement. *Lawrence* v. *Dobyns*, 196.

11. Where a note is made payable at a particular place, presentment at that place is sufficient in order to charge an endorser ; the holder is not bound to present it elsewhere or personally to the maker. *Id.*

12. It is discretionary with the courts to relax the rules of evidence as to the order of examining witnesses or introducing testimony ; material testimony should not be excluded because offered after the testimony is closed, unless it has been kept back by trick, and the opposite party would be deceived or injuriously affected by it. *Dozier* v. *Jermain*, 216.

13. A party to a suit is entitled to examine as a witness any of the adverse parties thereto. (R. C. 1855, p. 1577, § 3.) *Fagan* v. *Long*, 222.

14. By the act of February 12, 1857, (Sess. Acts, 1857, p. 181,) " a party may be examined as a witness in behalf of his co-plaintiff or of a co-defendant as to any matter in which he is not jointly interested or liable with such co-plaintiff or co-defendant, and as to which a separate and not joint verdict or judgment can be rendered. *Garnier* v. *Lebeau*, 229.

15. Where a continuance was applied for in behalf of several defendants in a cause on the ground of the absence of a co-defendant alleged to be a material witness in their behalf; *held*, that the motion was properly overruled on the ground that it did not appear, but that all the defendants were interested in the defence which the testimony of the said co-defendant was expected to support. *Id.*

16. Where the defence relied upon is a joint defence, upon which all the defendants rely, one defendant can not be permitted, under the act of February 12, 1857, (Sess. Acts, 1857, p. 181,) to testify in behalf of his co-defendants. *Scheifer* v. *Kahlman*, 232.

17. The supreme court will not grant new trials on the ground that the verdicts are against the weight of evidence. *Rider* v. *Springmeyer*, 234.

18. In the trial of a criminal case, the legal existence of a banking corporation may be proved by general reputation. (R. C. 1855, p. 1193, § 23.) This rule is applicable to the case of a corporation organized under the general banking law of another state. *State* v. *Fitzsimmons*, 237.

19. Where a creditor in stating an account between himself and his debtor gives a credit therein to the latter by mistake, or is induced to give such credit on terms and conditions that are not afterwards complied with by the debtor, he ought to be permitted to avail himself of these facts in a suit against the debtor to recover the item for which the credit was allowed. *Moore* v. *Albright*, 249.

20. The solemn declarations made by a party to a suit in his petition or answer, are, if pertinent, admissible in evidence against him in behalf

EVIDENCE—(*Continued.*)

of persons not parties to the suit, not by way of estoppel, but by way of admission. *Warfield* v. *Lindell*, 272.

21. Where a defendant in ejectment seeks to show an outstanding title in another, and offers in evidence a deed executed by the same parties under whom plaintiffs claim, he may by extrinsic evidence, if the descriptions and calls of the two deeds are different but not repugnant, show that the calls are such as will make the deed under which defendant claims embrace the same land conveyed to plaintiffs. *Schultz* v. *Lindell*, 310.

22. The *opinion* of a surveyor as to the proper *location* of a grant or conveyance of land is inadmissible in evidence to determine such location. *Id.*

23. In trials for perjury it is improper to instruct the jury that the law presumes the declarations of a party against himself to be true, when the object of such an instruction is to make the declarations evidence of the falsity of the oath. The weight of such declarations is to be determined by the jury. Of themselves they are not sufficient to convict one of perjury. *State* v. *Williams*, 364.

24. Whether leading questions may be put to witnesses testifying in a cause is discretionary with the court; so also whether the answers to leading questions in depositions shall be received. *Smith* v. *Hutchings*, 380.

25. A declaration made by a child two days before its death to a person who inquired of him the cause of the swollen appearance of his face, that "papa did it," *held* to be inadmissible in evidence against the father on his trial for the murder of the child, the declaration not being a part of the *res gestæ*, nor being made *in articulo mortis*. *State* v. *Dominique*, 585.

26. To authorize one defendant to testify in behalf of his co-defendant, his testimony must be such as will not weigh in his own behalf; it should bear upon some special defence peculiar to such co-defendant. *Vaughn* v. *Scade*, 600.

EXECUTION.

See SHERIFF.

1. Where a constable or other officer, previous to the levy of an execution, demands and obtains an indemnification bond of the plaintiff under the first section of the sheriff's and marshal's act of March 3, 1855, (Sess. Acts, 1855, p. 464,) he will be exempt from liability on his official bond at the suit of a claimant of the property levied on and sold other than the defendant, although such claimant may have claimed the property of the officer orally and not in conformity to the third section of said act. *State, to use of, &c.*, v. *Watson*, 122.

2. It is not the failure of the claimant to give notice of this claim to the officer in the form required by the third section of said act that exempts the officer from liability to such claimant; it is the taking of an indemnification bond in conformity to the provisions of the first section of said act. *Id.*

3. The exemption from liability guaranteed to an officer levying an execution by the fifth section of the act of March 3, 1855, (Sess. Acts, 1855, p. 464,) where an indemnification bond has been given as required by

EXECUTION—(*Continued.*)

    that act, extends to an action of replevin brought against such officer. *St. Louis, Alton & Chicago Railroad Co.* v. *Castello*, 124.

4. The provision of the act regulating executions (R. C. 1845, p. 481, § 28,) directing the sheriff to divide real estate levied on and sell so much thereof as will be sufficient to satisfy the execution, is directory ; a violation of its injunctions will not render the sale void. *Fine* v. *St. Louis Public Schools*, 166.

EXPERTS.

    See EVIDENCE, 22.


# F

FARMERS' BANK OF MISSOURI.

    See TAXATION.

FRAUD AND FRAUDULENT CONVEYANCES.

    See ASSIGNMENTS FOR BENEFIT OF CREDITORS. ESTOPPEL.

1. Inadequacy of consideration for the conveyance of land is not, of itself, a sufficient ground of relief, unless it is so gross as to raise a presumption of fraud. *Morisso* v. *Philliber*, 145.

2. Where a person, owning real estate of the value of three thousand five hundred dollars, but who had no knowledge of its value, was illiterate, being able neither to read nor write, was induced by a person, in whom she had confidence and who acted in a double capacity as agent for both parties, to dispose of said real estate to another for seventy-five dollars; *held*, that the transaction was stamped with fraud, and the facts would warrant a decree setting aside the conveyance on the ground of fraud. *Id.*

3. If a third person voluntarily convey a chattel to a trustee in trust for the separate use of the wife of another, it will be held free and clear of all claims of the creditors of the husband; to constitute the transaction fraudulent as against the creditors of the husband, the consideration must come from the husband. *Bay* v. *Sullivan*, 191.

4. The settlements and allowances of a guardian in a probate court in the matter of his guardianship have the force and effect of judgments, and can be set aside in an equitable proceeding against him only upon proof that they were procured by fraud. *Brent* v. *Grace's Adm'r*, 253.

5. Upon such an issue it is no proof of fraud in procuring the allowances that the guardian made expenditures for the maintenance and education of his ward without first procuring an appropriation by the probate court; the allowance of an account for expenditures already made satisfies the statute. (R. C. 1855, p. 826, § 24.) *Id.*

6. If a guardian, instead of expending the money of his ward for the latter's maintenance and education, gives his individual note therefor, and receives receipts from the creditor, and procures a credit therefor in his settlement with the probate court, this will not constitute fraud as against the ward; the ward, in such case, would not, it seems, be liable for the debt. *Id.*

FRAUD AND FRAUDULENT CONVEYANCES—(*Continued.*)

7. Where a deed of assignment of goods is, on its face, in trust to the use of the grantor therein, it is fraudulent and void as against creditors, existing and subsequent, and purchasers ; and the courts will so declare as a matter of law. *Johnson* v. *McAllister, Assignee*, 327.

8. Where, however, the deed is not void on its face, and extrinsic evidence is adduced to show it to be fraudulent, the court will submit the issue of fraud, under proper instructions, to the jury, who will determine, as a matter of fact, whether the deed is fraudulent or not. *Id.*

9. The fact that a deed of assignment gives the assignee the privilege of selling the assigned goods on a credit does not render the deed void on its face. *Id.*

10. The thirty-ninth section of the act concerning voluntary assignments (R. C. 1855, p. 210) does not prevent a debtor from assigning his property for the benefit of a portion only of his creditors ; said section operates to invalidate all provisions in such assignments which give preferences among the designated creditors; the designated creditors are entitled to be paid *pro rata* out of the proceeds of the assigned property. *Id.*

11. The reservation to the grantor in a deed of assignment for the benefit of certain designated creditors of any surplus there may be after the payment of the debts of such preferred creditors does not render the deed void on its face. *Id.*

12. The fourth section of the act concerning fraudulent conveyances, (R. C. 1845, p. 526 ; R. C. 1855, p. 803,) making conveyances of chattels void as to creditors and purchasers unless accompanied by possession in the grantee or unless duly recorded, as there directed, has no extra territorial operation ; it does not apply to deeds made in another state, where all the parties to them and the property conveyed by them are located at the date of their execution. If the deed is valid by the law of the place where made, it is valid in this state. *Smith* v. *Hutchings*, 380.

13. A mortgage or deed of trust of personal property is valid between the parties thereto, although possession may not accompany the deed, and no record be made thereof. *Johnson* v. *Jeffries*, 423.

14. The eighth section of the act concerning fraudulent conveyances, (R. C. 1855, p. 804,) providing that no mortgage or deed of trust of personal property shall be valid against any other person than the parties thereto, unless possession thereof be delivered to and retained by the mortgagee, or trustee, or *cestui que trust*, or unless the mortgage or deed of trust be acknowledged or proved and recorded, can not be invoked by all persons indiscriminately, whether trespassers or wrongdoers; to entitle a person to invoke the aid of this provision against the mortgagee, or trustee, or *cestui que trust*, he must show himself related in some way to the parties to the instrument. *Id.*

15. Where a debtor deposits personal property in the hands of another as bailee with a view fraudulently to protect it from his creditors, such bailee can not avail himself of such fraudulent intent to defeat an action brought against him by the debtor for the recovery of such property. *Gowan's Adm'r* v. *Gowan*, 472.

# G

GENERAL AVERAGE.

1. Where goods are shipped on board a barge to a port on the western waters, and the barge on the voyage is accidentally grounded and in danger of being lost by the perils of navigation together with the goods on board, and it becomes necessary, for the purpose of saving the barge and lumber from destruction, to unload and reload the same, and the master does so load and reload and take care of the barge and goods when so unloaded, it is a case for contribution, of general average. *Dilworth* v. *McKelvy*, 150.

GRAND JURORS.

See Crimes and Punishments.

1. Grand jurors may indict on their own information or knowledge; they may indict a person for perjury in testifying before themselves. *State* v. *Terry*, 368.

GUARDIAN.

1. The settlements and allowances of a guardian in a probate court in the matter of his guardianship have the force and effect of judgments, and can be set aside in an equitable proceeding against him only upon proof that they were procured by fraud. *Brent* v. *Grace's Adm'r*, 253.

2. Upon such an issue it is no proof of fraud in procuring the allowances that the guardian made expenditures for the maintenance and education of his ward without first procuring an appropriation by the probate court; the allowance of an account for expenditures already made satisfies the statute. (R. C. 1855, p. 826, § 24.) *Id.*

3. If a guardian, instead of expending the money of his ward for the latter's maintenance and education, gives his individual note therefor, and receives receipts from the creditor, and procures a credit therefor in his settlement with the probate court, this will not constitute fraud as against the ward; the ward, in such case, would not, it seems, be liable for the debt. *Id.*

# H

HUSBAND AND WIFE.

See Marriage.

# I

INADEQUACY OF CONSIDERATION.

See Equity. Fraudulent Conveyances.

INDIAN MARRIAGES.

See Marriage.

INFANTS.

See Practice, 32, 33, 34.

INHERITABLE BLOOD.

See DESCENTS AND DISTRIBUTIONS.

INSTRUCTIONS.

See PRACTICE.

INSURANCE.

1. Where the freight list of a steamboat on a proposed trip or voyage is insured against a total loss only, the policy will cover the freight pending at the time of loss, although some freight may have been previously earned by the delivery of goods at intermediate ports. *Willard* v. *Millers' & Manufacturers' Insurance Co.*, 35.

2. If a steamboat, whose freight list is insured against a total loss only, meets with a disaster upon the contemplated trip, and can not be repaired in a reasonable time to transport the cargo, and the master is unable to send the cargo forward to its place of destination for a sum less than the original freight, there will be a total loss on freight within the meaning of the policy. *Id.*

3. In order that a policy of insurance may be binding upon the insurer, it must be accepted by the insured. *Wallingford* v. *Home Mutual Fire and Marine Insurance Co.*, 46.

4. The charter of a mutual fire insurance company declared that the applicant for insurance "shall, before he receives his policy, deposit his promissory note, &c., a part not exceeding ten per cent. of which shall be immediately paid." The by-laws provide that "policies shall take effect at 12 o'clock, noon, on the day of approval at the office of the company, and shall be binding thereafter, provided the premium or ten per cent. tax on the premium note has been paid," and that "ten per cent. of the premium note shall be paid in all cases and endorsed on the policy." *Held*, that the giving of the note and payment of the prescribed ten per cent. were conditions precedent to the taking effect of a policy. *Id.*

5. Where a boat was insured on time, with the privilege of navigating the usual waters of the Mississippi, Ohio, Tennessee, Illinois and Cumberland rivers, with a proviso in the policy that she should not engage in the "cotton trade;" *held*, that engaging in the trade between Memphis and New Orleans, and adapting the boat to the carriage of cotton, making five or six trips loaded with cotton, advertising her as a regular packet between these points, was engaging in the cotton trade, and a loss by fire, when at the wharf in Memphis, although not a pound of cotton was on board, was a loss not covered by the policy. *Gaty* v. *Phœnix Insurance Co.*, 56.

6. A concealment of facts by an applicant for insurance of a building against fire is not material unless a disclosure of the facts concealed would have induced the insurer to decline the risk or enhance the premium. *Boggs & Leathe* v. *American Insurance Co.*, 63.

7. In contracts of fire insurance, it is sufficient if the applicant for insurance make true and full answers to the questions put to him by the insurer in respect to the subject of insurance; he is not answerable for an omission to mention the existence of other facts about which no in-

INSURANCE—(*Continued.*)

quiry is made, unless he knows such facts to be material and intentionally fails to communicate them. *Id.*

8. Statements made to insurers in respect to the subject of insurance can not be invoked against the insurers to overthrow the defence of a fraudulent concealment of material facts unless such statements were made in connection with the application for insurance. *Id.*

9. The liability of an insurance company for losses by thefts occurring at the time of a fire is not restricted to such losses occurring during the continuance of the fire merely; if the loss by theft be occasioned directly by the fire, the insurer will be liable though it happen after the extinguishment of the fire. *Newmark* v. *Liverpool and London Fire and Life Insurance Co.,* 160.

10. The affidavits and accounts of loss constituting the preliminary proofs furnished by the insured to the insurance company are evidence that the insured has complied with the stipulations of the policy in this respect; they are not evidence in favor of the insured as to the amount of the loss. *Id.*

# J

JUDGMENTS.

1. Where there is a right of action against several, a mere judgment against one without satisfaction is no discharge of the others. *McLaurine* v. *Monroe's Adm'r,* 462.

JUDGMENTS OF SISTER STATES.

1. A transcript of the proceedings of a court of Indiana had appended thereto a certificate of the clerk, in which he certified said transcript to be "a full, true and complete transcript of all the proceedings had in the above case, as now remains of record and on file in my office." The judge of the court certified the certificate and attestation of the clerk to be "in due form." *Held,* that the transcript was duly authenticated under the act of Congress. *Grover* v. *Grover,* 400.

2. In an action on a judgment of a sister state, the validity of such judgment under the law of such sister state can not be called in question; if the judgment be erroneous, it can only be vacated in a direct proceeding instituted for that purpose to the court in which it was rendered. *Id.*

3. A decree rendered in a sister state without due notice to the defendant is not binding upon him in this state, nor can it be evidence against him for any purpose as a decree. A general objection to the admission of such a decree as evidence is sufficient. *McLaurine* v. *Monroe's Adm'r,* 462.

JURISDICTION.

See MANDAMUS. JUSTICES' COURTS.

JURORS.

See PRACTICE.

1. The inhabitants of the city of St. Louis are incompetent jurors in a case in which the city is interested as party; for example, in a case in which

JURORS—(*Continued.*)

the Board of President and Directors of the St. Louis Public Schools is a party. In such case the court should disregard the special act of March 5, 1855, (Sess. Acts, 1855, p. 527,) and direct the summoning, by special venire, of a. jury from that portion of the county outside of the city limits. *Fine* v. *St. Louis Public Schools*, 166.

JURY.

See CRIMES AND PUNISHMENTS, 1, 2, 3.

1. In all trials in courts of record in which a party is entitled to a jury, the jury must consist.of twelve men. The right to demand in such cases a jury of twelve men is a constitutional right. *Vaughn* v. *Scade*, 600.
2. The provision in the act organizing the St. Louis law commissioner's court prescribing that "in all jury trials in said court the jury shall consist of six lawful jurors, or a less number if the parties shall consent thereto," is unconstitutional; juries in that court, as in all courts of record, must consist of twelve men. (R.C. 1855, p. 1597, § 6.) *Id.*
3. If, however, a trial in said court proceeds with a less number than twelve jurymen, and no exceptions are taken on that ground, a party can not avail himself of the error except by motion in arrest of judgment, which must be made within the time prescribed by law or the rules of court. *Id.*
4. There is nothing in the bill of rights which prevents parties from trying, by consent, their causes in the St. Louis law commissioner's court with six jurors, as provided in the act organizing that court; the consent should always, in such cases, be entered of record. *Id.*

JUSTICES' COURTS.

1. A party may give jurisdiction to a justice of the peace by a voluntary renunciation of a part of his demand. It matters not in what way the reduction of the demand is made, so the amount claimed is within the jurisdiction of the justice. *Denny* v. *Echelkamp*, 140.
2. Justices of the peace have no jurisdiction of actions for torts—as for unlawfully taking and detaining personal property—where the damages claimed amount to ninety dollars. *Ahern* v. *Carroll*, 200.
3. Where one of two defendants does not join in an appeal from a justice of the peace, the appellate court may, on proper motion, order a severance. *Fagan* v. *Long*, 222.
4. All the acts which, from the beginning to the end of a suit, the law requires a justice of the peace to perform, are, it seems, to be regarded as judicial and as involving only that responsibility which attends all judicial officers; in issuing an execution, a justice of the peace is not to be held responsible as a mere ministerial officer. *Wertheimer* v. *Howard*, 420.
5. A judgment was obtained before a justice of the peace; the justice issued execution thereon by direction of the plaintiff, but made the same returnable in sixty instead of ninety days, as required by law, by reason of which the plaintiff lost, and became unable to make, the amount of the debt out of the defendant. *Held*, in an action against the justice to recover damages for the negligent and illegal issue of the exe-

JUSTICES' COURTS—(*Continued.*)

cution, that the justice was not liable; that the act of the justice was to be regarded as judicial and-not ministerial merely. *Id.*

6. Justices of the peace have jurisdiction of actions for the recovery of specific personal property not' exceeding the value of fifty dollars. *Butler* v. *Ivie*, 478.

7. If a plaintiff, to give the justice jurisdiction of an action for the possession of specific personal property, allege the value thereof to be fifty dollars, the action may be defeated by showing that the value of the property, upon a just estimate, would exceed fifty dollars. *Id.*

8. A justice of the peace has no jurisdiction over actions for injuries to personal property, wherein the damages claimed exceed fifty dollars; nor can the plaintiff give jurisdiction in such case by waiving the tort in his statement and setting forth that he sues in assumpsit. *Webb* v. *Tweedie*, 488.

9. Objection to the jurisdiction of the justice on this ground may be made for the first time in the circuit court on appeal. *Id.*

10. On the appeal of a cause from a justice of the peace, the same cause of action, and no other, is to be tried in the appellate court that was tried in the court below. If the justice had no jurisdiction because the damages claimed for injuries to personal property exceeded fifty dollars, the plaintiff would not be entitled in the appellate court to amend by changing the sum claimed to fifty dollars. *Id.*

11. By the third section of the territorial act of February 1, 1817, (1 Terr. Laws, p. 548,) a justice of the peace of Missouri territory was authorized to take acknowledgment of deeds where the lands conveyed lay outside the county of which he was justice. (NAPTON, Judge, *dissenting.*) *Duly* v. *Brooks*, 515.

12. Where in the case of an appeal from a justice of the peace the appeal bond affords ample security, it is improper to require the appellant to file an additional bond. *Reed* v. *Leffingwell*, 543.

13. Justices of the peace have jurisdiction of actions brought by laborers against railroad corporations under the twelfth section of the general railroad act. (R. C. 1855, p. 414.) *Grannahan* v. *Hannibal & St. Joseph Railroad Co.*, 546.

# L

LANDLORD AND TENANT.

1. Where it is stipulated in a lease that in case any of the covenants are broken by the lessee, "the term shall become null and void at the option of the lessor," the term does not become ended absolutely by a breach of a covenant; it is only voidable at the option of the lessor; he must do some act declaring or claiming a forfeiture. *Walker* v. *Engler*, 130.

2. So, where it was stipulated that the lessee would pay double rent for all the time the lessor should be kept out of possession after the expiration of the term by forfeiture, *held*, the double rent reserved was not a penalty, but estimated or liquidated damages. *Id.*

LANDLORD AND TENANT—(*Continued.*)

3. Acceptance of rent by a lessor, after the lessee had committed a breach of his covenants, such as would authorize the lessor to declare a forfeiture, would not be a waiver of the forfeiture if the lessor was ignorant of such breach at the time of the acceptance of rent. *Id.*

4. If a person, already in possession of premises as tenant, verbally contract with the owner for a new term, his mere continuance in possession after the making of the alleged contract is not an act of part performance such as will justify a decree for the specific enforcement of the verbal contract. *Spalding* v. *Conzelman,* 177.

5. In order that improvements made by a tenant continuing in possession under such circumstances may be entitled to much consideration, as bearing upon his right to a decree for a specific performance, they should be of such marked and important character as not to be naturally reconcilable with the continuance of the old relation. *Id.*

6. If a landlord sells the leased premises to another, the defendant is not thereby discharged of his obligation to pay rent to the vendor, unless the vendee give him notice that he claims the rent. *Gray* v. *Rogers,* 258.

LANDS AND LAND TITLES.

See ALLUVION. TRESPASS.

1. By the Spanish law a person might divest himself of title to his immovable estate by abandoning it; should he depart from it with the intention that it should be no longer his, this would constitute an abandonment. The question of abandonment is one of fact, of intent, to be determined by the jury from all the circumstances of the case. *Fine* v. *Public Schools,* 166.

2. To establish a title to land by virtue of a confirmation by the act of Congress of June 13, 1812, it is not necessary to show any documentary title, or any permission to occupy, or any other title emanating from the Spanish government; proof of inhabitation, cultivation or possession is sufficient. *Id.*

3. It would be improper in an instruction to indicate to the jury that, in a case where the claim of the party was based upon possession and cultivation alone, testimony of less weight would be sufficient to make out an abandonment, than in a case where the claim was evidenced by a documentary title of some kind emanating from the Spanish government. *Id.*

4. In the case of a confirmation under the act of Congress of March 3, 1807, where the confirmation is accompanied with the condition that the land confirmed should be surveyed, such survey, when made by the proper executive officers of the United States government, conclusively settles the question of the locality of the tract confirmed, and the courts of equity as well as law can not locate the tract elsewhere. *Magwire* v. *Tyler,* 202.

5. In the year 1766, the French commandant at the post of St. Louis granted and conceded to Pierre François DeVolsey a lot of ground in said village, of two hundred and forty feet front on the side of the Mississippi and fronting thereto (du côté du Mississipi et y faisant face),

**LANDS AND LAND TITLES—(*Continued.*)**

by three hundred feet in depth on the side of the woods (du côté du bois), having said front upon the grand (or main) street (tenant la dite face et par devant la grande rue,) in the rear another main street (une autre grande rue), &c. The concession was bounded on the sides also by streets. *Held*, that the concession did not constitute the grantee a riparian proprietor; that the concession was bounded by the street in front and not by the river; that neither he nor his grantees would be entitled to alluvion formed in front of the street. *Smith* v. *St. Louis Public Schools*, 290.

**LIEN.**

See MECHANICS' LIEN.

1. Raftsmen engaged as such on the Mississippi river have, in the absence of any special limitations on their rights, a lien on rafts in their charge to secure the compensation due them as raftsmen. *Farrington* v. *Meek*, 578.

2. Certain persons as raftsmen engaged at certain rates to run certain rafts from a point in the state of Wisconsin to any point on the Mississippi river between Dubuque and St. Louis that might be designated. The special agreement contained this further stipulation, that " the parties of the first part will furnish money enough to pay off the men within twenty-four hours after the delivery of the said lumber to market; the balance of the money to be paid after the lumber is sold and estimated or measured." *Held*, that the raftsmen had a lien upon the rafts for an amount sufficient to pay off at the point of destination the men employed by them; that the special contract overthrew the lien of the raftsmen only for so much of the contract price of transportation as exceeded the sum necessary to pay off the hands at the place of delivery. *Id.*

**LIMITATION.**

1. In order to make a continuous adverse possession in successive occupants, so as to enable an occupant of land to avail himself of the possession of a preceding occupant, there should be some privity between them; the entry of the succeeding occupant must be with the consent of his predecessor, evidenced by contract, or by an act of the law passing the estate from the latter to the former. *Shaw* v. *Nicholay*, 99.

2. A. died in possession of and claiming title to a block of ground, and devised the same to his widow. Paramount title to said block was in B. The widow, who, with another, were appointed executrix and executor of the will, made a compromise with B.—said widow and her co-executor conveying to B. one-half of the block, and B. conveying to the widow the other half. The probate court granted its consent to the making of this compromise on the application of the co-executor. Afterwards an order of sale was made by the probate court, and the widow and her co-executor sold and conveyed to C. all the right, title and interest which A. had in and to that portion of said block quitclaimed by B. to the widow of A. This sale was made for the payment of debts. After the death of A. the widow remained in possession

LIMITATION—(*Continued.*)

of said ground up to the sale to C. *Held,* that the possession of A. was an interest in said block; that the widow, under the circumstances, could do no act by which the rights of creditors would be prejudiced; that she could not defeat the estate provided for the payment of debts, which would be done by annexing her possession as devisee to the title acquired from B.; that the sale by the executors to C. transferred the possession held by the devisee under the will, and that C., in making out a defence to an ejectment by the widow founded on the title acquired by her by virtue of the compromise with B., might connect his possession after the executors' sale with the possession of the widow previous to and after the compromise, and with that of A. previous to his death. *Id.*

3. The character of a disseisin as between tenants in common is different from that of a disseisin as against strangers. This distinction is founded on the presumption that a person, who enters into possession of a tract of land having a title thereto, enters in conformity thereto; *prima facie* the entry of one tenant in common is not adverse to his co-tenants, but in support of the common title; his possession and seisin are the possession and seisin of his co-tenants. *Warfield* v. *Lindell,* 272.

4. One tenant in common may disseise or oust his co-tenants. To constitute an adverse possession by one tenant in common as against his co-tenants, an actual ouster, or " turning out by the heels," is not necessary; there must, however, be some notorious and unequivocal act asserting an entire ownership. *Id.*

5. Whether this assertion of an entire ownership must be brought home to the *actual* knowledge of the co-tenants depends upon the character of such act of assertion. If it be a verbal assertion or declaration of entire ownership, it can be of no avail to establish an adverse possession unless brought home to the knowledge of the co-tenants. *Id.*

6. When, however, the act asserting an entire ownership is of such a nature as the law will presume to be noticed by persons of ordinary diligence in attending to their own interests, and of such an unequivocal character as not to be easily misunderstood, it does not devolve upon the possessor to show that actual notice was given to the co-tenant or to prove a probable actual knowledge on his part; it is sufficient if the act is overt and notorious; if, in such case, the co-tenant is ignorant of his rights, or neglects them, he must bear the consequences. *Id.*

7. A possession of land by a tenant in common for twenty-six years, and an exclusive receipt by him of the rents and profits, without any account rendered or any demand made, would not of themselves raise a legal presumption of ouster by such tenant in common of his co-tenants. *Id.*

8. The actual possession of a part of a tract of land by the rightful owner carries with it the constructive legal possession and seisin of the whole tract so far as the same is not *actually* occupied adversely by another. *Schultz* v. *Lindell,* 310.

9. Where, however, the true owner of a tract of land is not in the actual possession of any portion of such tract, the actual possession of a part

LIMITATION—(*Continued.*)

of the same by another, who is in such possession under a colorable title to the whole, will carry with it a constructive possession of the whole tract as against such true owner. *Id.*

10. Where a large tract embraces and includes several smaller tracts, an actual possession by the owner of the large tract of a small portion of the same outside of one of the smaller tracts included in it will not be construed to be a constructive adverse possession of such smaller tract against the true owner thereof, although the latter may not be in the actual possession of any portion of his tract. *Id.*

LIS PENDENS.

See PRACTICE, 39.

1. *Quere,* whether the doctrine of *lis pendens* is applicable to movable personal property. *McLaurine* v. *Monroe's Adm'r,* 462.

# M

MANDAMUS.

1. If the error complained of in the proceedings of an inferior court can be redressed on appeal or writ of error, a mandamus will be refused by the supreme court. *Bleeker* v. *St. Louis Law Commissioner's Court,* 111.

2. Questions of jurisdiction as between the several courts of St. Louis county may be determined by the supreme court on appeal or writ of error. *Id.*

MARRIAGE.

1. Among the savage tribes of North American Indians marriage is merely a natural contract, and neither law, custom nor religion has affixed any conditions, limitations or forms other than those which nature herself has prescribed. *Johnson* v. *Johnson's Adm'r,* 72.

2. Permanency is not to be regarded as an essential element of marriage by the law of nature; otherwise all such connections as have taken place among the various tribes of the North American Indians—either between persons of pure Indian blood, or between half breeds, or between the white and Indian races—must be regarded as illicit and the offspring illegitimate; for it is well established that in most of the tribes, perhaps in all, the understanding of the parties is that the husband may dissolve the contract at his pleasure. The power of divorce in one or both of the parties to a contract of marriage, at his or her pleasure, is not inconsistent with the law of nature. *Id.*

3. A mere casual commerce between the sexes does not constitute a marriage by the law of nature; but where there is a cohabitation by consent, for an indefinite period of time, for the procreation and bringing up of children, that, in the state of nature, would be a marriage. *Id.*

4. It is well settled, as a general proposition, that a marriage, valid according to the law or custom of the place where it is contracted, is valid everywhere. *Id.*

5. Where the legitimacy of children is called in question, especially after their death, and after a great lapse of time, every reasonable presump-

41—VOL. XXX.

MARRIAGE.—(*Continued.*)

tion should be indulged in in favor of legitimacy; very slight circumstances are sufficient to authorize a court or jury to find the existence of a marriage. *Johnson* v. *Johnson's Adm'r*, 73.

6. By the statute law of this state "the issue of all marriages deemed null in law, or dissoved by divorce, shall be legitimate;" (R. C. 1845, 1855, tit. Descents and Distributions;) hence, upon an issue of legitimacy, the inquiry is limited to the mere fact of a marriage *de facto* and in this investigation the jury are bound to make every intendment in favor of the legitimacy of the children not necessarily excluded by the proof. *Id.*

7. Where a white man, living in the Indian country, introduced an Indian woman into his family, cohabited with her and became the father of children by her, assumed and discharged parental duties toward those children, provided liberally for their education, introduced them into his household upon his subsequent marriage with another woman, secured their recognition in the social circle in which he moved, and their marriage as his daughters, made liberal provision for them in his will, and solemnly recognized them as his children in that instrument—no question being made as to their legitimacy during the life of the father—*held*, that all these circumstances constituted presumptive evidence of a marriage with the Indian woman, when its existence was questioned nearly fifty years after it is alleged to have taken place, when two of the children were dead leaving heirs, and the father also died without leaving any other children. *Held*, further, that the fact, that after cohabiting with the Indian for years, the white man separated from her and sent her back to her tribe, could have no tendency to overthrow the presumption of a marriage arising from the previous cohabitation and other circumstances, if such separation and sending away were consistent with the usages among the Indians, not only in reference to their own marriages, but to intermarriages with the traders who sojourned with them. It is a right conceded to the husband by the terms of the contract, and its exercise can not therefore be regarded as inconsistent with it. *Id.*

MARSHAL.

See CLAIM AND DELIVERY OF PERSONAL PROPERTY.

MEASURE OF DAMAGES.

See DAMAGES.

MECHANICS' LIEN.

1. If a contractor, who has furnished materials for, and expended work and labor upon, the construction of a building for another, receives from the latter a promissory note for the sum due, payable at a time beyond the expiration of the period within which he must file his lien under the act with respect to mechanics' liens, but within the period within which suit must be commenced, if at all, to enforce the lien, he will not thereby have waived his right to file his lien or to enforce the same against the building; he merely suspends his right of action. The filing of the lien is not the bringing of a suit. *McMurray* v. *Taylor*, 264.

MINISTERIAL ACTS.

See Justices' Courts.

MORTGAGES.

See Vendors and Purchasers.

1. The sixth section of the act concerning the foreclosure of mortgages (R. C. 1855, p. 1089) allows persons, claiming an interest in the mortgaged property, to be made parties defendant, on motion, in suits for foreclosure, only with a view to the protection of their own interests. It was not designed thereby that a third party should be let into the suit with a view to the protection of the interests of the necessary parties. Such third party must show that some injustice would be done to him by letting judgment go against the other parties. *Wall* v. *Nay*, 494.

MUNICIPAL CORPORATIONS.

See Banks. Taxation.

# P

PARIS, TOWN OF.

See Taxation, 7.

PARTITION.

1. Infants can not appear by attorney as parties plaintiff in actions for partition; they must sue by guardian. *Fulbright* v. *Canefox*, 425.

2. Judgments rendered in proceedings where infants appear by attorney are not nullities as to them; they are voidable, and may be set aside on terms. *Id.*

3. It is the duty of the court, in proceedings for partition, to see that all the title of the parties to the suit is conveyed by the judgment. Hence, where in proceedings for partition one of the plaintiffs, an infant, appeared by attorney, and the sheriff afterwards instituted suit on a note given to him by a purchaser at the partition sale, who defended on the ground that the judgment in partition was invalid as to such minor, who had since become of age; *held*, that, before compelling the purchaser to pay the note given for the land purchased at the partition, it would be proper that the question as to the acquiescence of such minor in the partition judgment and sale should be satisfactorily settled. *Id.*

PARTNERSHIP.

See Bills of Exchange and Promissory Notes.

1. An incoming partner is not liable for debts contracted before he enters the partnership; nor can his co-partner render him liable for such previously contracted debts by giving a note therefor in the partnership name. The incoming partner may, by his agreement, become liable for such debts, and the new firm may; with the consent of the creditors, novate such debts. *Fagan* v. *Long*, 222.

PAYMENT AND SATISFACTION.

1. The taking of a promissory note does not extinguish an open account; upon the production of the note a recovery may be had on the account. *McMurray* v. *Taylor*, 263.

PAYMENT AND SATISFACTION—(*Continued.*)

2. Where a note has been taken for an indebtedness evidenced by open account, and a receipt given therefor, a statement in the receipt to the effect that the note was taken "in settlement of the account" would not be sufficient, alone, to authorize the court to submit to the jury, by instruction, the issue whether the note was taken in payment or satisfaction of the account. *Id.*

3. Where there is a right of action against several, a mere judgment against one without satisfaction is no discharge of the others. *McLaurine* v. *Monroe's Adm'r*, 462.

PLEADING.

See AGREEMENT, 3. BILLS OF EXCHANGE AND PROMISSORY NOTES, 2.

1. The objection that a petition does not state facts sufficient to constitute a cause of action is not waived by a failure to take the same by demurrer or answer. *Ivory* v. *Carlin*, 142; *Molony* v. *Boernstein*, 144.

2. Where several causes of action are embraced in the same petition, they should be separately stated. *Linville* v. *Harrison*, 228.

3. To enable a defendant to avail himself of a want of demand on the part of the plaintiff of a sum of money claimed to be due, the defendant should set up the matter in his answer, and accompany the same with a tender of the amount due; in which case, if the plaintiff will further prosecute his suit, and shall not recover a greater sum than is tendered, he shall pay all costs. (R. C. 1855, p. 448.)  *Westcott* v. *DeMontreville*, 252.

4. Nothing can be set up as a counter-claim, which is not a cause of action, a cross demand, and that does not contain the substance necessary to sustain an action by defendant against the plaintiff, if the plaintiff had not sued the defendant. *McPherson* v. *Meek*, 345.

5. A person with whom a contract is entered into for the benefit of another may sue in his own name in enforcement of such contract without joining with him such other person; he is a trustee of an express trust within the meaning of the second section of the second article of the practice act. (R. C. 1855, p. 1217.) He may, or may not, join the beneficiary as a party in the suit. *Wright* v. *Tingley*, 389.

6. In order that a third party, not an original party to a suit, may be permitted to come in and set up his claim to the subject matter in controversy or his defence, it is not required that he should be a *necessary* party. *Carter* v. *Mills*, 432.

POSSESSION.

See LIMITATION. ESTOPPEL.

PRACTICE.

See PRACTICE AND PROCEEDINGS IN CRIMINAL CASES. ATTACHMENT. CRIMES AND PUNISHMENTS. JUSTICES' COURTS.

1. The admission of testimony that is merely irrelevant, and which could not have influenced the jury in forming their verdict, is no ground for the reversal of a judgment by the supreme court. *Picker* v. *Haidorn*, 92.

2. If the error complained of in the proceedings of an inferior court can

PRACTICE—(*Continued.*)

be redressed on appeal or writ of error, a mandamus will be refused by the supreme court. *Bleeker* v. *St. Louis Law Commissioner's Court*, 111.

3. Questions of jurisdiction as between the several courts of St. Louis county may be determined by the supreme court on appeal or writ of error. *Id.*

4. All the proceedings of a court of record are in the breast of the court during the term at which they are had, and may be modified or set aside; hence it is not regular, without leave of court, to take a transcript of such proceedings to be filed in the office of the clerk of the supreme court before the expiration of the term of the inferior court at which such proceedings are had; an appellant will not be in default who fails to file such transcript in the office of the clerk of the supreme court before the expiration of such term of the inferior court. *Truesdail* v. *Sanderson*, 113.

5. The objection that a petition does not state facts sufficient to constitute a cause of action is not waived by a failure to take the same by demurrer or answer. *Ivory* v. *Carlin*, 142.

6. When a case has been retried in an inferior court according to the principles laid down in the decision of the supreme court, none of the questions, which were decided when the case was first in the supreme court, should be open for re-examination on a second writ of error or appeal, unless some general principle of law has been manifestly decided incorrectly the first time, or injustice to the rights of the parties would be done by adhering to the first opinion. *Chambers' Adm'r* v. *Smith's Adm'r*, 156.

7. The inhabitants of the city of St. Louis are incompetent jurors in a case in which the city is interested as party; for example, in a case in which the Board of President and Directors of the St. Louis Public Schools is a party. In such case the court should disregard the special act of March 5, 1855, (Sess. Acts, 1855, p. 527,) and direct the summoning, by special venire, of a jury from that portion of the county outside of the city limits. *Fine* v. *St. Louis Public Schools*, 166.

8. The provision of the act regulating executions (R. C. 1845, p. 481, § 28,) directing the sheriff to divide real estate levied on and sell so much thereof as will be sufficient to satisfy the execution, is directory; a violation of its injunctions will not render the sale void. *Id.*

9. An instruction given to a jury is erroneous if it is calculated to mislead them by inducing them to attach undue importance to a portion of the testimony and to divert their attention from other facts entitled to consideration. Instructions should not amount to a commentary on the evidence. *Id.*

10. Where the instructions given to the jury fully state the law applicable to the facts, the refusal of other instructions asked will not be error, although such instructions may be correct. *Bay* v. *Sullivan*, 191.

11. Instructions are calculated to mislead and are erroneous which place the case before the jury upon a portion of the facts only, and which, in effect, restrict the issue, and exclude from the consideration of the jury questions that must be passed upon. *Mead* v. *Brotherton*, 201.

12. Where in an attachment suit the defendant files a plea in the nature

PRACTICE—(*Continued.*)

of a plea in abatement putting in issue the truth of the facts alleged in the plaintiff's affidavit, and the issue raised by this plea is found for the plaintiff, the defendant should be allowed time, if he ask it, without terms, to file an answer in bar of the action. *Bourgoin* v. *Wheaton*, 215.

13. Though amendments should be liberally allowed in furtherance of justice, yet the discretion of the inferior courts will not be controlled by the supreme court unless it has been manifestly abused. *Dozier* v. *Jerman*, 216.

14. Where a defendant prays the court on the trial to be allowed to amend his answer, and the court refuses to grant the motion, but allows the defendant to introduce evidence in support of the issue raised by the proposed amendment, and fully submits said issue to the jury by the instructions given, the discretion of the court in the allowance of amendments is not abused. *Id.*

15. A party wishing to avail himself of error in the giving or refusing of instructions must take his exception at the time they are given or refused; it is too late to make his objections for the first time on a motion for a new trial. *Id.*

16. It is discretionary with the courts to relax the rules of evidence as to the order of examining witnesses or introducing testimony; material testimony should not be excluded because offered after the testimony is closed, unless it has been kept back by trick, and the opposite party would be deceived or injuriously affected by it. *Id.*

17. Wherever the jury is authorized, in a case of unliquidated damages, to allow interest in estimating the damages, the interest is not recoverable as such in addition to the damages assessed by the jury, but must enter into the estimate made by the jury and be found as a part of the damages assessed. *Id.*

18. A party to a suit is entitled to examine as a witness any of the adverse parties thereto. (R. C. 1855, p. 1577, § 3.) *Fagan* v. *Long*, 222.

19. Where one of two defendants does not join in an appeal from a justice of the peace, the appellate court may, on proper motion, order a severance. *Id.*

20. By the act of February 12, 1857, (Sess. Acts, 1857, p. 181,) "a party may be examined as a witness in behalf of his co-plaintiff or of a co-defendant as to any matter in which he is not jointly interested or liable with such co-plaintiff or co-defendant, and as to which a separate and not joint verdict or judgment can be rendered. *Garnier* v. *Lebeau*, 229.

21. Where a continuance was applied for in behalf of several defendants in a cause on the ground of the absence of a co-defendant alleged to be a material witness in their behalf; *held*, that the motion was properly overruled on the ground that it did not appear, but that all the defendants were interested in the defence which the testimony of the said co-defendant was expected to support. *Id.*

22. Where the defence relied upon is a joint defence, upon which all the defendants rely, one defendant can not be permitted, under the act of February 12, 1857, (Sess. Acts, 1857, p. 181,) to testify in behalf of his co-defendants. *Scheifer* v. *Kahlman*, 232.

PRACTICE—(*Continued.*)

23. The supreme court will not grant new trials on the ground that the verdicts are against the weight of evidence. *Rider* v. *Springmeyer*, 234.

24. A cause was set for trial on the 6th of May, 1858; on the 5th of May the defendant issued subpœnas for witnesses; these subpœnas were returned by the sheriff "not found;" on the 6th the case was called for trial, but was not tried; on the 7th it was again called, whereupon the defendant filed a motion for a continuance on the ground of the absence of material witnesses, accompanying said motion with an affidavit in which he set forth that when he discovered on the 6th day of May that the subpœnas had been returned "not found," he searched for said witnesses and used his best endeavors to find them and procure their attendance. The court overruled the motion. *Held*, that the motion was properly overruled. *Evans* v. *Pond*, 235.

25. A. brought an action for assault and battery against B. B. demurred to the petition. The demurrer was overruled, a default taken, and an assessment of damages had and judgment rendered therefor. B. moved the court to set aside the judgment on the ground that plaintiff's counsel had taken judgment by default in violation of an agreement entered into by him with defendant's counsel not to take action in the cause during the temporary absence of the latter. This motion was overruled. The defendant appealed to the supreme court. Pending this appeal the plaintiff died and his administrator was substituted. *Held*, that under such circumstances, the supreme court would not reverse, as a reversal would be equivalent to a dismissal of the suit. *Marguard* v. *Ricter*, 248.

26. To enable a defendant to avail himself of a want of demand on the part of the plaintiff of a sum of money claimed to be due, the defendant should set up the matter in his answer, and accompany the same with a tender of the amount due; in which case, if the plaintiff will further prosecute his suit, and shall not recover a greater sum than is tendered, he shall pay all costs. (R. C. 1855, p. 448.) *Westcott* v. *DeMontreville*, 252.

27. The supreme court will not grant new trials on the ground that the verdicts are against the evidence. *McLean's Adm'r* v. *Bragg*, 262.

28. Where property is conveyed in trust, *bona fide*, to secure the payment of certain debts due, and a third person, by virtue of a sale under a judgment against the grantor in the deed of trust, subsequently obtains title, subject to such deed of trust, to a portion of the property embraced in said deed, such purchaser will not be entitled to intervene in proceedings instituted to enforce the deed of trust against all the property embraced in it, and to require that that part of the property in which he has no interest shall first be appropriated to the payment of the trust debt. *Fleshman* v. *Shepard*, 324.

29. Where it was the uniform practice of a circuit court not to try cases reversed and remanded by the supreme court at the first term next after such reversal, *held*, that it was no error to continue such cause at such term. *McNeeley* v. *Hunton*, 332.

30. No dismissal of a suit as to a party thereto should be allowed, when it will produce derangement in the rights of the defendants, deprive them

PRACTICE—( *Continued.* )

of a legal defence, or subject them to increased difficulties or liabilities. *Browning* v. *Chrisman*, 353.

31. In equity there may be a decree against one defendant in favor of a co-defendant. *Id.*

32. B. conveyed certain real estate to D. with covenants of warranty. D. instituted an action of ejectment against C. to recover possession thereof. C. set up in his answer as a defence to this action a prior purchase by himself of said real estate from B.; that he had taken possession and paid a portion of the purchase money; that B. had executed a deed of said real estate to him, but fraudulently refused to deliver it; that D., fraudulently contriving and confederating with B., obtained a deed from the latter. C. offered to pay the remainder of the purchase money, and prayed for a decree of title against D. and B.; that B. be made a party to the action; and that an order of publication be made against B., he being a non-resident. An order of publication was made against B. The court, by its decree, vested the title to the real estate in controversy in C., annulled the deed of B. to D., and decreed that C. should pay to B. the balance of the purchase money, and gave judgment against B. and D. for costs. Afterwards B. presented a petition to the court, under the provisions of the thirtieth article of the practice act of 1849, (Sess. Acts, 1849, p. 103, § 8—11,) praying the court to set aside the decree, and for leave to file an answer. This motion was accompanied by an affidavit denying specifically the allegations contained in the answer of C. The court granted leave to B. to file an answer; which leave was acted upon by the latter. Afterwards C. filed a motion setting forth that the original action of D. against him was an action of ejectment; that he, C., set up an equitable defence praying for a decree of title and that B. might be made a party; that he was accordingly made a party and a decree rendered in favor of C.; that said B. was not and is not a necessary party; and praying the court to set aside the judgment or decree as to said B. and strike his name out as a party, leaving the judgment in full force against D. The court sustained the motion, and the judgment rendered in the suit of D. against C. and B. was set aside as to B., the court directing that the case should be "left open for B. to pursue any remedy he may have against C., as though he had never been a party to the original suit of ejectment instituted" by D. against C. The court dismissed the petition. *Held*, that this action of the court was erroneous; that B. would be injuriously affected by the decree, his deed to D. being a deed with covenants of warranty; that B. had a right to come in and plead to the original action. *Id.*

33. Infants can not appear by attorney as parties plaintiff in actions for partition; they must sue by guardian. *Fulbright* v. *Canefox*, 425.

34. Judgments rendered in proceedings where infants appear by attorney are not nullities as to them; they are voidable, and may be set aside on terms. *Id.*

35. It is the duty of the court, in proceedings for partition, to see that all the title of the parties to the suit is conveyed by the judgment. Hence, where in proceedings for partition one of the plaintiffs, an infant, ap-

PRACTICE—(*Continued.*)

peared by attorney, and the sheriff afterwards instituted suit on a note given to him by a purchaser at the partition sale, who defended on the ground that the judgment in partition was invalid as to such minor, who had since become of age; *held*, that, before compelling the purchaser to pay the note given for the land purchased at the partition, it would be proper that the question as to the acquiescence of such minor in the partition judgment and sale should be satisfactorily settled. *Id.*

36. In suits for the possession of personal property, under the eighth article of the practice act of 1849 (Sess. Acts, 1849, p. 82,) if the defendant gave a forthcoming bond, as allowed by said article, with sureties, judgment could be rendered against the sureties only in the mode pointed out in the ninth section of said article. *Baldwin* v. *Dillon,* 429.

37. In order that a third party, not an original party to a suit, may be permitted to come in and set up his claim to the subject matter in controversy or his defence, it is not required that he should be a *necessary* party. *Carter* v. *Mills,* 432.

38. Where a party seeks the specific enforcement of a contract to convey land, and a third person, not a party to such suit as originally instituted, who claims the same land by an alleged superior title under the person against whom such specific enforcement is sought, desires to be made a party, he may well be permitted to come in and defend; if a decree as between the original parties to the suit would affect his rights injuriously—as by casting a shadow on his title—he would have a *right* to be heard. *Id.*

39. One M., residing in the year 1856 in the state of California, owned certain lots adjoining the city of St. Joseph, Missouri. He had in St. Joseph an agent authorized to sell said lots for a specific sum. An uncle of M., a surgeon in the United States army, stationed at Fort Columbus, New York harbor, was also made acquainted with his wish to dispose of said lots. An offer by one G. to purchase said lots was transmitted through said uncle to M. in California. M. thereupon executed a deed dated in California, October 6, 1856, conveying said lots to G., and forwarded the same by mail to the uncle at Fort Columbus, where it was received by him about December 1, 1856, and immediately handed over to Gibbs upon his paying the purchase money. In the mean time, the agent of M. at St. Joseph had, on the 20th of October, 1856, in good faith, entered into a written contract to sell said lots to one C. C., on the 29th of Nov'r, 1856, instituted a suit against M. for the specific enforcement of this contract. M., being a nonresident, was notified by publication, but made default. G., on his own motion, was admitted to defend, against the objection of the plaintiff. *Held,* that G. was, under the circumstances, properly admitted to defend; that having the legal title and a prior equity—the acceptance of the offer of G. being prior to the contract with C.—his title would prevail over the naked agreement to convey to C. *Id.*

40. An order of publication against absent defendants does not operate as notice to purchasers until it is executed. *Id.*

PRACTICE—( *Continued.* )

41. The sixth section of the act concerning the foreclosure of mortgages (R. C. 1855, p. 1089) allows persons, claiming an interest in the mortgaged property, to be made parties defendant, on motion, in suits for foreclosure, only with a view to the protection of their own interests. It was not designed thereby that a third party should be let into the suit with a view to the protection of the interests of the necessary parties. Such third party must show that some injustice would be done to him by letting judgment go against the other parties. *Wall* v. *Nay*, 494.

42. A person is not entitled to the reversal by the supreme court of a judgment for error committed against another. *Id.*

43. Exceptions to the giving or refusing of instructions should be taken at the time of the ruling of the court; the instructions should be incorporated in the bill of exceptions. *Thompson* v. *Russell*, 498.

44. The supreme court will not grant new trials on the ground that the verdicts are against the weight of evidence. *Id.*

45. Where illegal testimony is introduced without objection, and the party introducing the same asks an instruction based upon it, the court may properly refuse to grant it. *Weaver* v. *Hendrick*, 502.

46. The supreme court will not grant a new trial on the ground that an instruction unsupported by the testimony was given, unless the giving of such instruction was calculated to mislead the jury. *Anderson* v. *Kincheloe*, 520.

47. Courts should not give instructions amounting to a comment on the testimony, nor instructions calculated to mislead the jury by inducing them to attach undue importance to a portion only of the testimony, and to divert their attention from other facts' entitled to consideration. *Id.*

48. Where a surprise of a party on the trial of a cause results from a want of diligence on his part—as where he is surprised by the testimony of his own witness, from whom he had sought no information previous to the trial—the court will not be warranted in granting a new trial on the ground of surprise ; the court should also be satisfied that the injury sustained could probably be repaired on a second trial. *O'Conner* v. *Duff*, 595.

49. Courts should not confuse juries by instructing at too great length. *Vaughn* v. *Scade*, 600.

## PRACTICE AND PROCEEDINGS IN CRIMINAL CASES.

See CRIMES AND PUNISHMENTS.

1. It is the right and privilege of a jury in a criminal prosecution to determine the facts submitted to them for decision without regard to and uninfluenced by the opinion the judge presiding at the trial may have as to the facts ; the judge can not refuse to receive a verdict returned by the jury on the ground that it is manifestly against the evidence. *The State* v. *Ostrander*, 13.

2. If the verdict returned by a jury in a criminal prosecution be sensible and responsive to the issue, it is the duty of the court to receive it and have it recorded. *Id.*

PRACTICE AND PROCEEDINGS IN CRIMINAL CASES—(*Continued.*)

3. An affirmative verdict of guilty of murder in the second degree is responsive to an indictment for murder in the first degree; and however strong may be the opinion of the judge that such a verdict is unwarranted by the evidence, and although no instructions whatever may have been given bearing upon the law of murder in the second degree, it would be improper for the judge to refuse to receive such a verdict and order it to be recorded. *Id.*

4. The twenty-first section of the ninth article of the act concerning crimes and their punishments (R. C. 1855, p. 642) is properly invoked by an accused person only after trial and conviction; the accused should be tried as if he were an adult, and afterwards, upon suggestion, the court should ascertain the age, and if he be found to be under sixteen years of age, the court should adjust the punishment in accordance with the statute. *State* v. *Gavner,* 44.

5. It is discretionary with the court, in the trial of a criminal case, whether the witnesses in attendance shall be separated and ordered to retire so that they may not hear each other's testimony. If such an order be made and be disobeyed, it is, it seems, a matter of discretion with the court whether the disobedient witness shall be examined or not; it is not error to permit him to be examined. *State* v. *Fitzsimmons,* 286.

6. A motion to quash a *scire facias* upon a forfeited recognizance should not be sustained, if sufficient appear upon the entries and files of the court to entitle the State to an award of execution. *State* v. *Littlepage,* 322.

7. Grand jurors may indict on their own information or knowledge; they may indict a person for perjury in testifying before themselves. *State* v. *Terry,* 368.

8. The concluding clause of the twenty-seventh section of the fourth article of the act regulating proceedings in criminal cases, (R. C. 1855, p. 1176, § 27,) providing that no indictment shall be deemed invalid, nor the trial, judgment or other proceedings thereon be stayed, arrested or in any manner affected, "for any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits," should, at least, be limited in its application to imperfections of the class previously enumerated in said section. *State* v. *Pemberton,* 376.

9. Where a person is indicted for a felonious assault and is acquitted, the acquittal is a bar to any further proceedings; an appeal can not be prosecuted to the supreme court by the State. *State* v. *Palmer,* 385.

10. The validity of a recognizance entered into by a party for his appearance to answer an indictment can not be determined upon a motion to quash the same; but only upon *scire facias* after forfeiture. *State* v. *Hopkins,* 404.

PRINCIPAL AND AGENT.

See TORTS.

1. Where a public agent, in the character of such agent, acknowledges a liability—as where the president of a board of trustees of a school dis-

PRINCIPAL AND AGENT—(*Continued.*)

trict, as trustee, promises, on behalf of such trustees, by a written promissory note, to pay a liability incurred for the building of a schoolhouse—such agent is not personally liable. *Hodges* v. *Runjan*, 491.

2. To constitute a person a trespasser in the wrongful seizure and removal of the property of another, it is not necessary that he should actually participate in the act of seizing and removing; if he directs or assents to the trespass—as by directing the sheriff to levy an execution upon such property — he is liable as a trespasser. *McNeeley* v. *Hunton*, 332.

3. He who, knowing that he has no right to the possession of property, withholds the possession thereof from the true owner, who had wrongfully been deprived of the same, may be supposed to have assented to the wrongful act by which such possession was obtained. *Anderson* v. *Kincheloe*, 520.

PROMISSORY NOTES.

See Bills of Exchange and Promissory Notes.

# R

RAILROADS.

See Torts.

1. If horses or animals are killed or injured by the cars, locomotives or other carriages used on a railroad, and the accident does not occur at a crossing of a highway or on a portion of the road enclosed by a fence, the railroad company will be liable for such injury, under the fifth section of the act approved December 12, 1855, (R. C. 1855, p. 649,) irrespective of any question of negligence, unskilfulness or misconduct on the part of the officers, servants, or agents of such company. *Burton* v. *North Missouri Railroad Co.*, 312.

2. This liability extends to railroad companies, whether the fifty-second section of the general railroad act (R. C. 1855, p. 437) applies to such road or not. *Id.*

3. Justices of the peace have jurisdiction of actions brought by laborers against railroad corporations under the twelfth section of the general railroad act. (R. C. 1855, p. 414.) *Grannahan* v. *Hannibal & St. Joseph Railroad Co.*, 546.

4. The twelfth section of the general railroad act is constitutional in its application to railroad corporations previously created. *Id.*

5. Although a contractor under a railroad company may sublet to another, and bind such sub contractor not to give out his contract to another, yet if such sub-contractor should violate this agreement and give out the contract to another, a laborer under the latter could maintain an action under the twelfth section of the general railroad act against the railroad company. *Id.*

6. The exemption of the stock of the Hannibal and St. Joseph Railroad Company from all state and county taxes, contained in the original charter of said company, is modified by the acceptance on the part of